## No. 20386.

W. J. DIGBY, ET AL., *v.* F. W. DENNER, ET AL.

(398 P.2d 30)

Decided January 11, 1965.

ALBERT B. DAWKINS, for plaintiffs in error.

MYRICK, SMITH and CRISWELL, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

WE are confronted here with a dispute involving interpretation of both case and statutory labor law as applied to a dismissed counterclaim filed in the trial court.

The parties and individuals involved will be referred to either individually or as follows: Plaintiffs in error collectively will be referred to as "defendants" the position they occupied in the trial court; W. J. Digby, Inc., will be referred to as the "corporate defendant" and the Digbys individually by name; defendants in error, Denner and Baldwin, will be referred to as "plaintiffs"; and Local No. 961 of the International Brotherhood of Team-

sters, Chauffeurs, Warehousemen and Helpers of America, one of the parties sought to be joined by the counterclaim in the trial court, will be referred to as "the union."

The determinative question on this writ of error is whether an employer (here defendants) may assert a counterclaim against individual members and officers of a union for the alleged breach of, or for a conspiracy to breach, a collective bargaining agreement in existence between the employer and that union.

The facts essential to an understanding of the above question are as follows: The plaintiffs commenced an action in the Denver District Court in September of 1961. Their complaint was founded in tort and alleged several claims for relief; namely, assault and battery and conspiracy. A change of venue was stipulated to between the parties, and the case was thereafter removed to the District Court of Jefferson County.

Defendants, on January 2, 1962, filed their answer and four counterclaims. The first two counterclaims on behalf of W. J. Digby and Mrs. W. J. Digby were based in tort, and alleged that one of the plaintiffs had committed an assault against the Digbys. The third counterclaim was on behalf of the defendant corporation only and alleged, in essence, that the plaintiffs and the union, as well as certain other members (the latter two parties whom it sought to join by separate motion), had conspired to induce defendant corporation to abandon its rights under an existing collective bargaining agreement by illegal and unlawful work stoppages, threats, coercion, intimidation and violence. This third counterclaim also alleged a breach of the collective bargaining agreement, and a conspiracy to induce the employees of the defendant corporation to breach said agreement. It prayed for judgment against the plaintiffs, the union and its other named members. In addition, the claim prayed for an injunction enjoining plaintiffs from continuing to conduct

themselves in the manner outlined in the pleadings. The fourth counterclaim alleged a conspiracy and is not material to this review.

Defendants also filed their motion for an Order Adding Parties Plaintiff. They hoped, thereby, to add the Union and certain members and officers of the Union, so that they could be sued and included in the litigation.

Plaintiffs' reply to the first and second counterclaims consisted of general denials. At the same time, they filed a Motion to Dismiss the third counterclaim on the following grounds, viz:

(1) "That the allegations contained within said Third Counterclaim fail to allege facts sufficient to entitle defendant W. J. Digby, Inc., to any relief;

(2) "That this Court lacks jurisdiction of the subject matter of said Third Counterclaim."

The trial court, after considering written briefs on the Motion to Dismiss, entered an order dismissing defendants' third counterclaim. It is this dismissal that resulted in this writ of error.

Before considering the question that we find to be determinative in this review, we shall comment on why the trial court's decision to deny the motion to add additional plaintiffs was correct. Our decision in this regard is based on the conduct and urging of counsel for defendants at the trial that "As I see it, it becomes unnecessary, therefore, to argue the motion to join as it would depend upon which way the Court decides the motion to dismiss." In brief, the trial court relied on this statement of counsel, granted the Motion to Dismiss, and on Motion for New Trial denied both a new trial and the Motion for an Order Adding Parties Plaintiff. The result of this procedure would appear to be exactly what counsel for defendants requested. It is, therefore, not now subject to review on this Writ of Error.

The present appellate proceedings stem from the trial

court's determination that the third counterclaim failed to state a claim against the plaintiffs which would allow the granting of any remedy to defendants. The following review of case and statutory law demonstrates that the ruling was correct.

██ In 1947, when Congress enacted the Labor-Management Relations Act (61 Stat. 136, et seq.), often referred to as "Taft-Hartley," as an amendment to the National Labor Relations Act (49 Stat. 449, et seq.), it provided, for the first time by Section 301 thereof (29 U.S.C.A. 185), that an action between a labor organization and an employer could be brought in a district court of the United States without regard to diversity of citizenship or to the amount in controversy. This section provides, in part, as follows:

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization *may sue or be sued as an entity* and in behalf of the employees whom it represents in the courts of the United States. *Any money judgment* against a labor organization in a district court of the United States shall be *enforceable only against the organization as an entity* and against its assets, and *shall not be enforceable against any individual member or his assets.*" (Emphasis supplied.)

██ It is important to note that the above Section, in general, and the quoted portion in particular, provides for suits only between an employer and a labor organization; that is, it allows suits against the labor organization "as an entity" and, it also calls for the enforcement of a "money judgment * * * only against the organization as an entity and against its assets * * *" and *not* against individual members.

We thus find Congress requiring that labor organizations be treated as legal entities; and further, we note certain specific statutory insulation for officers and members of unions against liability.

■ A review of the case law makes it clear that Section 301 is more than procedural. The United States Supreme Court has, in a series of cases, clearly and expressly ruled that this section of Taft-Hartley is the source of substantive rights, and is to be applied uniformly by federal courts as well as by state courts to the exclusion of any "local law" inconsistent with its provisions. See: *Textile Workers Union v. Lincoln Mills of Ala.,* 353 U.S. 448 (1957); *Dowd Box Co. v. Courtney,* 368 U.S. 502 (1962); *Local 174 v. Lucas Flour Co.,* 369 U.S. 95 (1962); *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238 (1962).

■ These cases make it clear that an action based upon the alleged violation of a collective bargaining agreement, whether that action is commenced in a federal court, or in a state court, is to be controlled exclusively by the federal labor policy, as that policy is enunciated in Section 301 and in the decisions of the United States Supreme Court interpreting that Section.

■ The third counterclaim in the instant case alleges a collective bargaining agreement between the corporate defendant and a labor organization, a conspiracy by the plaintiffs to induce a breach, and, the subsequent breach thereof by the union to the corporate defendant's damage in the amount of "at least $500,000.00." Such a claim falls within the purview of Section 301; it is not maintainable against individuals; but is only maintainable against the labor organization as an entity. See *Atkinson, supra.* Thus, the counterclaim did not state a claim under Section 301 as to these plaintiffs and was, therefore, properly dismissed.

In all respects the third counterclaim failed to state a

claim upon which relief could be granted. Accordingly, the judgment of dismissal is affirmed.

MR. CHIEF JUSTICE MCWILLIAMS not participating; MR. JUSTICE FRANTZ dissents.

MR. JUSTICE FRANTZ dissenting:

We are considering the propriety of the action of the trial court in granting a motion to dismiss for failure to state a claim. This motion was addressed to the third counterclaim in which W. J. Digby, Inc., sued for damages alleged to have resulted from certain conspiratorial acts of Denner and Baldwin and other individuals, together with the labor organization acting through its agents and members.

Much reliance for sustaining the trial court is placed on the opinion of Mr. Justice White in the recent case of *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 82 S.Ct. 1318, 82 L.Ed.2d 462. I believe the complaint in the cited case is distinguishable from the complaint in the present case, and that under the rules of pleading of both the federal courts and our courts, as interpreted by them respectively, a claim is stated in the third counterclaim. It may be that W. J. Digby, Inc., will be unable to sustain the complaint, and it may, upon trial, bring itself within the rule laid down in the *Atkinson* case. But that is not our concern at the present time: we are dealing solely with the sufficiency of the counterclaim.

In the *Atkinson* case, Mr. Justice White said this about the comparable claim in that case, i.e., comparable to the third counterclaim in the instant case:

"Count II of the complaint purported to invoke the diversity jurisdiction of the District Court. *It asked judgment in the same amount against 24 individual employees, each of whom was alleged to be a committeeman of the local union and an agent of the international, and responsible for representing the international, the*

*local, and their members.* The complaint asserted that on February 13 and 14, the individuals, 'contrary to their duty to plaintiff to abide by said contract, and maliciously confederating and conspiring together to cause the plaintiff expense and damage, and to induce breaches of the said contract, and to interfere with performance thereof by the said labor organizations and the affected employees, and to cause breaches thereof, *individually and as officers, committeemen and agents* of the said labor organizations, fomented, assisted and participated in a strike or work stoppage . . . .' "

True, the complaint in the *Atkinson* case alleged the dual role of the defendants (acting individually and as officers, committeemen, etc.), but Mr. Justice White emphasized their activity as being on behalf of the labor union.

Commencing at page 246 of the U.S. Reporter, the Court again emphasized the activity of the individuals as being the activity of the union in this language:

"* * * Count II states that the individual defendants acted 'as officers, committeemen and agents of the said labor organizations' in breaching and inducing others to breach the collective bargaining contract. Count I charges the principal, and Count II charges the agents for acting on behalf of the principal. Whatever individual liability Count II alleges for the 24 individual defendants, it necessarily restates the liability of the union which is charged under Count I, since under § 301 (b) the union is liable for the acts of its agents, under familiar principles of the law of agency (see also § 301 (e))."

There can be no doubt that the Supreme Court of the United States viewed Count II of the complaint there under consideration as asserting that the individual defendants in that case were acting on behalf of the union and not in any respect wholly in their individual capacities.

This is fortified by a footnote appearing at page 249 of the opinion, in which the Court expressly says that it is not passing upon the question of what would be the applicable law if the individual defendants were not acting in behalf of the union "but in their personal and nonunion capacity."

At pages 248, 249 the Court succinctly states its ruling:

"Consequently, in discharging the duty Congress imposed on us to formulate the federal law to govern § 301 (a) suits, we are strongly guided by and do not give a niggardly reading to § 301 (b). 'We would undercut the Act and defeat its policy if we read § 301 narrowly' (*Lincoln Mills*, 353 U.S., at 456). We have already said in another context that § 301 (b) at least evidences 'a congressional intention that the union as an entity, like a corporation, should in the absence of agreement be the sole source of recovery for injury inflicted by it' (*Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 470). This policy cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract or tort, or both, in a separate count or in a separate action for damages for violation of a collective bargaining contract for which damages *the union itself is liable.* The national labor policy requires and we hold that when a union is liable for damages for violation of the no-strike clause, its officers and members are not liable for these damages. Here, Count II, as we have said, *necessarily alleges union liability but prays for damages from the union agents. Where the union has inflicted the injury it alone must pay.* Count II must be dismissed." (Emphasis supplied.)

It will be noted from this language that where the union has inflicted the injury, it alone must pay. In the instant case we have a pleading which provides in significant part as follows:

"4. That the said plaintiffs, F. W. Denner and Everett Baldwin, together with Harry Bath, Floyd J. Overturf,

Orville Grove, Vernon O. Deus, and Thomas Buchanan, *each and all of them, willfully, wantonly, maliciously, and unlawfully agreed and conspired, together and among themselves, together* with the said Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 961, *by and through its agents,* officers and members, since on or about September 1, 1960, *to cause a breach of contract by the members* of said Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local No. 961, and to attempt to force and coerce the defendant, W. J. Digby, Inc., to abandon its rights under the existing collective bargaining agreement above described, defendant's Exhibits 1 and 2, and to interfere with and damage the defendant's business in order to accomplish this by illegal and unlawful work-stoppages, walk-outs, threatened strikes, threats, coercion, intimidation, and violence and protracted grievances on the part of the members of said union and as employees of the defendant, W. J. Digby, Inc." (Emphasis supplied.)

Other paragraphs of the complaint reinforce the theory of individual activity of Denner and Baldwin and other persons and that they acted not as members of the union but together with the union through the union's agents, officers, and members. There is no allegation that they acted both individually and on behalf of the labor organization, or wholly on its behalf.

I believe that we violate rules of pleading, as we have construed them in the past, if we sustain the trial court's dismissal of the third counterclaim. It has been stated by this court and by the Supreme Court of the United States that "a complaint will not be dismissed 'unless it appears to a certainty that plaintiff would be entitled to no relief under any state of facts which could be proved in support of claim . . . ' " *People ex rel. Bauer v. McCloskey,* 112 Colo. 488, 150 P.2d 861; *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.

The counterclaim under consideration charges that

certain individuals acted in concert with the labor union in seeking to bring about a breach of contract. And how did these individuals act in concert with the union? Through the union's officers and agents! Such an allegation negates the majority's view that this was a union activity in which the union was acting through Denner and Baldwin and certain other named individuals.

If the proof of Denner and Baldwin showed that they acted in conjunction with the other named individuals, but contrary to the directions of the union (proof which would have been proper under the complaint), individual liability would have been established. And if the proof showed that these individuals acted in concert, but there was an absence of evidence linking the union with their activities, again the liability of the individuals would have attached. Thus, a state of facts conceivably could have been adduced supportive of the claim.

Moreover, we have stated that, in testing the sufficiency of a claim, we search its four corners to ascertain whether a claim for relief can be spelled out of the pleading under scrutiny in any way, and if such can be done, the claim is not assailable by a motion to dismiss. *Dillinger v. North Sterling Irr. District,* 135 Colo. 100, 308 P.2d 608; *Kubal v. Jackson,* 119 Colo. 390, 203 P.2d 737. We have said, also, on a number of occasions, that a motion to dismiss a complaint for failure to state a claim for relief admits the verity of the facts alleged in the complaint. *McKinney v. Christmas,* 143 Colo. 361, 353 P.2d 373; *Ferch v. Hansen,* 115 Colo. 366, 174 P.2d 719.

Tested by these pronouncements we should hold that a claim may be spelled out against individuals, even though it is further alleged that these individuals acted cooperatively with the union. Failure to prove union participation would still have left a substantiated claim against the individuals. An allegation of individual activity should be accepted at face value on a motion to dismiss, even though it was further charged that such

activity was joined in by the union. Absence of proof that the union took part in the activity would not have affected individual liability.

I reiterate that we are confronted with a problem of pleading. By virtue of our rules of pleading and our decisions construing the rules, we should, as we have unswervingly done in the past, resolve all doubts in favor of the pleader and against the party attacking the sufficiency of the pleading.