(No. 61475.—

ROBERT B. BARTLEY, Appellee, v. UNIVERSITY ASPHALT COMPANY, INC., *et al.* (International Brotherhood of Teamsters, Local No. 26, Appellant).

*Opinion filed February 21, 1986.*

MILLER, J., took no part.

Cavanagh, Hosteny & O'Hara, of Springfield, for appellant.

John H. Otto, of Zimmerly, Gadau, Selin & Otto, of Champaign, for appellee.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Robert B. Bartley, brought this action in the circuit court of Champaign County alleging that he was discharged from his job because he cooperated with a Federal Bureau of Investigation (FBI) probe of his employer, University Asphalt Company, Inc. (University), and his union, the International Brotherhood of Teamsters, Local No. 26 (defendant). He charged University with the tort of retaliatory discharge and defendant with a civil conspiracy in furtherance of the retaliatory discharge. The circuit court entered summary judgment in favor of University and defendant. The appellate court, with one justice dissenting, reversed the judgments of the circuit court and remanded the cause for further proceedings. (129 Ill. App. 3d 231.) Thereafter, only defendant petitioned this court for leave to appeal (94 Ill. 2d R. 315), which we granted.

The central issue in this case is whether plaintiff's cause of action against defendant for civil conspiracy is preempted by Federal labor law. Defendant argues that plaintiff's State tort claim for civil conspiracy is preempted by Federal labor law, and that, as a result, it must be dismissed. In addition, defendant contends that the circuit court was correct in entering summary judgment in its favor because plaintiff's allegations do not support a finding of retaliatory discharge or civil conspiracy.

The plaintiff, who had been employed by University as a truck driver since 1969, was discharged from his job on October 15, 1981. The reason given by his employer for the discharge was that plaintiff had refused to haul a load of asphalt as directed by his foreman on October 13, 1981. Plaintiff contended, however, that the reason given by University for his discharge was a pretext and that in fact he was discharged for participating in a 1979 FBI probe of University and defendant.

After receiving his discharge notice, plaintiff filed a grievance against University through defendant, the recognized bargaining representative of certain employees, including plaintiff, at University's Urbana, Illinois, plant. The collective-bargaining agreement then in force between defendant and University stated that no employee covered by the agreement was to be discharged except for "justifiable cause," and it further provided for a multistep grievance procedure to resolve employee grievances, including binding arbitration in some instances. Pursuant to the grievance procedure provided for in the collective-bargaining agreement, Mike Carr, defendant's business representative, met with Gary Saathoff, University's general superintendent, on October 19, 1981, to discuss plaintiff's grievance. The meeting failed to resolve the dispute, and plaintiff's grievance was referred to the Joint Committee. The committee, which was comprised of an equal number of union and employer representatives, was established by the collective-bargaining agreement to hear employee grievances. On November 4, 1981, the committee denied the plaintiff's grievance.

Subsequently, on December 30, 1982, plaintiff filed suit against defendant and University in the United States District Court for the Central District of Illinois pursuant to section 301 of the Labor Management Relations Act of 1947 (LMRA) (29 U.S.C. sec. 185(a) (1982)). Section 301 vests Federal district courts with jurisdiction

over suits alleging a breach of contract between an employer and union. The complaint alleged that University had discharged plaintiff in retaliation for his participation in the FBI investigation of defendant and University, and, as such, plaintiff had not been discharged for "justifiable cause" as required by the collective-bargaining agreement.

The allegations against defendant were based on the theory that it violated Federal labor law by not fairly representing plaintiff in contesting his discharge. The complaint alleged that defendant was hostile toward plaintiff for his participation in the FBI investigation, and that, as a result, it breached its statutory duty of fair representation in that it "conspired with Defendant Company [University] to permit Plaintiff's discharge to stand." It further alleged that defendant "failed to use its best efforts to obtain and present witnesses and documentary evidence at the hearing" before the Joint Committee; failed to "present and argue Plaintiff's case *** to the arbitrator"; and "failed to produce evidence within its possession and control that would have supported Plaintiff's position."

According to the parties, defendant and University moved to dismiss the Federal suit on the ground that it was barred by the applicable statute of limitations. Thereafter, plaintiff's counsel, apparently agreeing that the suit was barred by the statute of limitations, moved to dismiss the suit and the plaintiff's motion was granted.

On April 11, 1983, plaintiff filed the present action. The complaint alleges in relevant part that University discharged plaintiff in retaliation for his involvement in the FBI investigation; that the discharge violated the "justifiable cause" provision of the collective-bargaining agreement; and that the discharge contravened "a clearly mandated public policy which favor [sic] Plain-

tiff's conduct in cooperation with a law enforcement agency." In an affidavit, plaintiff disputes the reason given by University for his discharge. As related, University maintains that plaintiff was discharged because he refused to haul a load of asphalt as directed by his foreman. Plaintiff's affidavit states that on the day in question he had already worked eight hours; that he received a message that his wife needed to go to the hospital; and that no loads of asphalt were available for him to haul despite his foreman's instructions to the contrary.

The allegations against defendant are substantially similar to the allegations contained in the 1982 Federal lawsuit. Count I of plaintiff's complaint in relevant part alleges that defendant "breached its statutory duty of fair representation" in violation of Federal labor law; that it "conspired" with University "to permit Plaintiff's discharge to stand" and that it was "hostile to Plaintiff because of his previous assistance to the FBI." The complaint further alleges that defendant "breached its duty to represent Plaintiff's interest at an arbitration proceeding" by failing "to use its best efforts to obtain and present witnesses and documentary evidence *** favorable to Plaintiff's position"; by failing to "present and argue Plaintiff's case *** to the arbitrators"; and by failing "to produce evidence within its possession and control that would have supported Plaintiff's position."

Count II of the complaint alleges that defendant and University "wrongfully agreed and conspired together to allow the *** retaliatory discharge *** to remain unchallenged by Defendant Union at the arbitration hearing of November 4, 1981, even though it was unjust and a clear violation of the collective bargaining agreement." Plaintiff states in an affidavit filed in response to defendant's motion for summary judgment that he relied on Mike Carr, defendant's business manager, to "properly frame

the issues" before the Joint Committee. He states that prior to the November 4, 1981, hearing of the Joint Committee, Carr advised plaintiff to "leave the talking to him (Carr)." Plaintiff also states that he did not give the committee his version of the events leading to his discharge on the advice of Carr.

On April 27, 1983, both defendant and University removed the present suit to the United States District Court for the Central District of Illinois on the ground that plaintiff's State tort action was preempted by Federal law. The Federal district court, after conducting a hearing on plaintiff's motion to remand, concluded that it lacked subject-matter jurisdiction, and it remanded the cause to the circuit court of Champaign County. Subsequently the circuit court entered summary judgment in favor of both University and defendant.

Under Federal labor law, unions have a statutory duty to represent fairly all employees in the bargaining unit, in negotiating and administering the collective-bargaining agreement. (*Vaca v. Sipes* (1967), 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903; *Humphrey v. Moore* (1964), 375 U.S. 335, 11 L. Ed. 2d 370, 84 S. Ct. 363; 6 Kheel, Labor Law sec. 28, at 42 (Supp. 1984 & 1985).) The duty of fair representation, which arises from a union's status as the exclusive bargaining representative, imposes on the union the "obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes* (1967), 386 U.S. 171, 177, 17 L. Ed. 2d 842, 850, 87 S. Ct. 903, 910.

Issues concerning a union's duty of fair representation frequently arise in the context of suits brought pursuant to section 301 of the LMRA (29 U.S.C. sec. 185(a) (1982)), which provides that suits for violation of contracts between an employer and union may be brought

in any Federal district court having jurisdiction of the parties without regard to the amount in controversy or the citizenship of the parties. Discharged employees, in bringing section 301 suits, often join both employer and union, alleging a violation of the collective-bargaining agreement by the employer, and a breach of the duty of fair representation by the union. See, *e.g., Vaca v. Sipes* (1967), 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903; *Harper v. San Diego Transit Corp.* (9th Cir. 1985), 764 F.2d 663; *Ramsey v. Signal Delivery Service, Inc.* (5th Cir. 1980), 631 F.2d 1210; *Fristoe v. Reynolds Metals Co.* (9th Cir. 1980), 615 F.2d 1209.

The record shows that plaintiff originally filed suit against defendant and University in Federal district court pursuant to section 301. Plaintiff's Federal complaint in essence alleged that University violated the "justifiable cause" provision of the collective-bargaining agreement and that defendant breached its duty of fair representation in handling plaintiff's grievance. Defendant contends that plaintiff's present suit alleges essentially the same cause of action as was alleged in the earlier Federal suit. As such, it argues that plaintiff's cause of action for civil conspiracy is preempted by Federal labor law. Plaintiff maintains, however, that the preemption issue was decided adversely to defendant by the Federal court. Additionally, plaintiff contends that the present suit for retaliatory discharge and civil conspiracy alleges a "distinctly different cause of action" from the section 301 suit and, consequently, is not preempted by Federal law.

Before considering plaintiff's complaint in light of Federal preemption principles, we address his argument that the preemption issue was decided adversely to defendant by the Federal district court. The Federal court record, which has been made a part of the record here, states that the case was remanded back to the cir-

cuit court because the Federal court concluded that the "action could not have been brought into *** [Federal court] originally." The determination that the Federal court lacked subject-matter jurisdiction was prompted by a statement by plaintiff "that the sole cause of action is based on the *** Tort of retaliatory discharge." The gist of plaintiff's argument is that the determination by the Federal court that it lacked subject-matter jurisdiction forecloses any claim by defendant that the present suit is preempted by Federal labor law. We disagree.

Defendant and University sought to remove the present case to Federal court pursuant to 28 U.S.C. section 1441(b) (1982), the removal provision governing cases which "arise under" the laws of the United States. A case is said to "arise under" the laws of the United States when a Federal question appears on the face of a plaintiff's well-pleaded complaint. It is well established that a defense predicated upon Federal law is not enough by itself to confer jurisdiction on a court, even though the defense is certain to arise. (*Pan American Petroleum Corp. v. Superior Court* (1961), 366 U.S. 656, 662, 6 L. Ed. 2d 584, 589, 81 S. Ct. 1303, 1307; *Madsen v. Prudential Federal Savings & Loan Association* (10th Cir. 1980), 635 F.2d 797.) Thus, Federal preemption, when raised by a defendant as a defense to a State-law claim, will not confer subject-matter jurisdiction on a Federal court. (*Illinois v. Kerr-McGee Chemical Corp.* (7th Cir. 1982), 677 F.2d 571, 577-78; *Madsen v. Prudential Federal Savings & Loan Association* (10th Cir. 1980), 635 F.2d 797, 801.) Although some Federal courts have recharacterized State tort suits involving employment disputes as section 301 actions and thereby allowed defendants to remove the suits to Federal court, courts have not uniformly done so. (Compare *Fristoe v. Reynolds Metals Co.* (9th Cir. 1980), 615 F.2d 1209 (removal was allowed after a State wrongful-discharge suit was

recast as a section 301 suit), with *Schaeffer v. General Motors Corp.* (E.D. Mich. 1984), 586 F. Supp. 870 (removal was not allowed because the labor preemption issue was raised solely as a defense).) Therefore, we believe that the record supports the conclusion that the Federal district court never reached the preemption issue raised by defendant.

The preemption doctrine has its basis in the supremacy clause of the Federal Constitution (U.S. Const., art. VI, cl. 2). Under the doctrine, Federal law is deemed in some instances to override or preempt State laws on the same subject. (See generally *Rice v. Santa Fe Elevator Corp.* (1947), 331 U.S. 218, 229-31, 91 L. Ed. 1447, 1459, 67 S. Ct. 1146, 1151-53.) In deciding preemption issues, including those which arise in the labor relations area, the Supreme Court has emphasized that "the question whether a certain state action is pre-empted by federal law is one of congressional intent." *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 208, 85 L. Ed. 2d 206, 213, 105 S. Ct. 1904, 1910; see also *Malone v. White Motor Corp.* (1978), 435 U.S. 497, 504, 55 L. Ed. 2d 443, 98 S. Ct. 1185.

In *Vaca v. Sipes* (1967), 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903, the Supreme Court addressed Federal preemption in the context of a suit brought by a union member against his union. The plaintiff in *Vaca* filed suit against the union in a State court in Missouri alleging that he had been discharged by his employer in violation of the collective-bargaining agreement. Although making no reference to Federal law, the complaint further alleged that the union had "arbitrarily, capriciously and without just or reasonable reason or cause" declined to proceed with plaintiff's grievance to arbitration. (386 U.S. 171, 173, 17 L. Ed. 2d 842, 848, 87 S. Ct. 903, 908.) The court, in passing upon the plaintiff's complaint, stated that "[i]t is obvious that [the] complaint al-

leged a breach by the Union of a duty grounded in federal statutes, and that federal law therefore governs his cause of action." (386 U.S. 171, 177, 17 L. Ed. 2d 842, 850, 87 S. Ct. 903, 910.) The court determined that both State and Federal courts have jurisdiction over fair-representation cases, but held that "federal law governs" such cases. 386 U.S. 171, 174, 17 L. Ed. 2d 842, 848, 87 S. Ct. 903, 908. See generally 6 Kheel, Labor Law sec. 28, at 42 (Supp. 1984 & 1985).

Following *Vaca*, many lower Federal courts determined that State tort or contract actions arguably alleging violations of the collective-bargaining agreement or the union's duty of fair representation were preempted by Federal labor law. See, *e.g., Oglesby v. RCA Corp.* (7th Cir. 1985), 752 F.2d 272 (a State tort action for retaliatory discharge was preempted by section 301 of the LMRA); *Olguin v. Inspiration Consolidated Copper Co.* (9th Cir. 1984), 740 F.2d 1468 (a State action alleging a wrongful discharge, wrongful discharge in violation of public policy, and intentional infliction of emotional distress was preempted by Federal law); *Ramsey v. Signal Delivery Service, Inc.* (5th Cir. 1980), 631 F.2d 1210 (a State tort action against a union for emotional distress was preempted by Federal labor law); *Fristoe v. Reynolds Metals Co.* (9th Cir. 1980), 615 F.2d 1209 (State common law actions against an employer and a union were preempted by Federal labor law). Contra, *Garibaldi v. Lucky Food Stores, Inc.* (9th Cir. 1984), 726 F.2d 1367 (a State wrongful-discharge action was not preempted).

Moreover, in the recent case of *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916, the Supreme Court concluded that Federal labor-contract law preempts State tort actions which are "substantially dependent upon analysis of the terms of an agreement made between the

parties in a labor contract." The plaintiff in *Lueck* suffered a nonoccupational injury and thereafter received disability benefits under a disability plan included in the collective-bargaining agreement in force between his employer and union. The benefits, however, were periodically discontinued. Under the collective-bargaining agreement, disputes concerning disability payments were resolved by resort to a three-step grievance procedure. Instead of filing a grievance with his union, however, the plaintiff brought a tort action in a State court in Wisconsin against his employer and its insurer, alleging bad faith in the handling of the disability claim. The State trial court granted summary judgment in favor of the defendants, holding that plaintiff had stated a claim under section 301 of the LMRA (29 U.S.C. sec. 185(a) (1982)) and that the complaint should be dismissed for failure to follow grievance procedures. Alternatively, the court held that if the claim was deemed to arise under State law, it was preempted. The Wisconsin Supreme Court reversed, holding that the State tort claim was distinguishable from a bad-faith breach-of-contract claim.

The Supreme Court in *Lueck* reversed, holding that the State tort claim was preempted by section 301 of the LMRA. The court observed that because of the congressional policy favoring a uniform body of Federal labor-contract law, it had interpreted section 301 of the LMRA as requiring the application of Federal substantive law to suits alleging violations of collective-bargaining agreements. As such, any "state rule that purports to define the meaning or scope of a term in a [labor] contract suit *** is pre-empted by federal labor law." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 210, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.) The court concluded that the same policy required application of the preemption doctrine to many State tort claims:

"If the policies that animate section 301 are to be given their proper range, however, the pre-emptive effect of section 301 must extend beyond suits alleging contract violations. These policies require that 'the relationships created by [a collective-bargaining] agreement' be defined by application of 'an evolving federal common law grounded in national labor policy.' *** The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of section 301 by relabeling their contract claims as claims for tortious breach of contract." (471 U.S. 202, 210-11, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.)

The court concluded that when a State tort claim is "substantially dependent upon analysis of the terms of [a collective-bargaining] agreement" the claim must either be treated as a section 301 claim or dismissed as preempted by Federal labor law. 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.

Our review of the above authorities convinces us that plaintiff's suit, as it pertains to defendant, must either be treated as an action arising under Federal labor law, or be dismissed as preempted. Although styled as a State tort suit for retaliatory discharge and civil conspiracy, it is clear that plaintiff's complaint alleges a violation of a collective-bargaining agreement and a breach of defendant's duty of fair representation. Count I of plaintiff's complaint, which contains some allegations relating to the civil conspiracy claim, alleges in relevant part:

"13. Defendant Local Union conspired with *** [University] to permit Plaintiff's discharge to stand *although there was no justifiable cause therefore.*

\* \* \*

16. *Defendant Union breached its duty to represent Plaintiff's interest at the arbitration proceeding* in the following manner:

A. Defendant Union failed to use its best efforts to obtain and present witnesses and documentary evidence at the hearing favorable to Plaintiff's position, and to present and argue Plaintiff's case otherwise to the arbitrators;

B. Defendant Union deliberately failed to produce evidence within its possession and control that would have supported Plaintiff's position;

C. Defendant Union informed the Plaintiff that no further steps could be taken to contest the discharge.

17. As a result of the foregoing facts, Plaintiff was not protected by the collective bargaining agreement and lacked any recourse against *** [University] under that agreement, even though *** [University's] action in discharging Plaintiff was unjust and a clear violation of the collective bargaining agreement." (Emphasis added.)

Count II of plaintiff's complaint, which also contains allegations of civil conspiracy, alleges in relevant part:

"19. That the Defendants wrongfully agreed and conspired together to allow *** [University's] retaliatory discharge of Plaintiff to remain unchallenged by Defendant Union at the arbitration hearing of November 4, 1981, *even though it was unlawful, unjust and a clear violation of the collective bargaining agreement.*

20. As a result, *Defendant Union not only breached its duty of fair representation to the Plaintiff,* it also conspired to do so with the Defendant Company [University]." (Emphasis added.)

Thus, the complaint essentially alleges that plaintiff was discharged in violation of the "justifiable cause" provision of the collective-bargaining agreement and that defendant breached its statutory duty of fair representa-

tion. As such, plaintiff has alleged a violation of "a duty grounded in federal statutes, and that Federal law therefore governs his cause of action." *Vaca v. Sipes* (1967), 386 U.S. 171, 177, 17 L. Ed. 2d 842, 850, 87 S. Ct. 903, 910.

Plaintiff concedes that the present cause of action against defendant could be construed as one arising under Federal labor-contract law. Indeed, plaintiff originally brought suit against defendant in Federal court under section 301 of the LMRA. He argues, however, that the action for civil conspiracy is sufficiently independent from the Federal claim so as to avoid preemption. We disagree. An evaluation of plaintiff's cause of action for civil conspiracy reveals that it is "substantially dependent upon analysis of the terms of [the collective-bargaining] agreement." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.) In order to support his conspiracy theory, plaintiff has alleged that a collective-bargaining agreement was in force between defendant and University; that University violated the terms of the agreement; that defendant conspired with University to violate the terms of the agreement; and that defendant breached its statutory duty of fair representation by not representing plaintiff adequately during the grievance proceedings established by the collective-bargaining agreement. Thus, plaintiff's State tort claim for civil conspiracy is "inextricably intertwined with consideration of the terms of the labor contract." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.) To hold that plaintiff's cause of action only sounds in tort, and is wholly independent of the Federal labor-contract claim, would "elevate form over substance and allow parties to evade the requirements" of Federal labor law. 471 U.S. 202, 211, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.

See *Maynard v. Revere Copper Products, Inc.* (6th Cir. 1985), 773 F.2d 733 (action alleging violation of the Michigan handicap discrimination statute was preempted by a section 301 fair-representation claim); *Harper v. San Diego Transit Corp.* (9th Cir. 1985), 764 F.2d 663 (a State common law action alleging that a union "breached duty of fair representation" was preempted by Federal law); *Vantine v. Elkhart Brass·Manufacturing Co.* (7th Cir. 1985), 762 F.2d 511 (a State tort action for retaliatory discharge was preempted by section 301 of the LMRA); *Lingle v. Norge Division of Magic Chef, Inc.* (S.D. Ill. Oct. 9, 1985), 120 L.R.R.M. (BNA) 2859; *Green v. Hughes Aircraft Co.* (S.D. Cal. 1985), 119 L.R.R.M. 3610 (a defamation action against an employer was preempted by section 301 of the LMRA). *Cf. Peterson v. Air Line Pilots Association, International* (4th Cir. 1985), 759 F.2d 1161 (an employee's State civil conspiracy action against the union was preempted by the Federal fair-representation claim under the Railway Labor Act).

We hold, therefore, that plaintiff's cause of action against defendant for civil conspiracy is preempted by Federal labor-contract law. Accordingly, the judgment of the appellate court, as it pertains to this defendant, is reversed. The cause is remanded to the circuit court of Champaign County for further proceedings consistent with this opinion.

*Reversed and remanded.*

JUSTICE MILLER took no part in the consideration or decision of this case.