JAMES AUBUSCHON, Plaintiff-Appellee, v. INTERNATIONAL MILL SERVICE *et al.*, Defendants-Appellants.

Fifth District   No. 5—87—0216

Opinion filed April 27, 1988.—Rehearing denied May 16, 1988.

Robert W. Wilson and Michael Reda, both of Evans & Dixon, of Edwardsville, and Ira L. Blank, of Popkin & Stern, of St. Louis, Missouri, for appellants.

John J. Hopkins, of Hopkins & Bilbrey, P.C., of Granite City, for appellee.

JUSTICE KARNS delivered the opinion of the court:

James Aubuschon, plaintiff, began working for International Mill Service (IMS) in June of 1979. He was a member of Local 2762 of the United Steelworkers of America (the Union) which, in turn, was party to a collective-bargaining agreement with IMS. Under this agreement, IMS agreed to replace its employees' personal tools used in the performance of their specific jobs which were lost or missing at the jobsite unless there was an abuse of the replacement provision.

During the summer of 1980, Aubuschon reported his tools as being stolen, and IMS replaced the tools in accordance with the collective-bargaining agreement. In 1981, Aubuschon again reported his tools as being stolen, and again IMS replaced the tools. From February to August of 1982, Aubuschon was off work. When he returned to work in August, his tools were not in his locker. Aubuschon requested a new set of tools, but IMS refused to replace the tools a third time. Aubuschon subsequently filed a written grievance in accordance with

the collective-bargaining agreement pertaining to the replacement of his tools. IMS ultimately agreed to replace the missing tools necessary to his job. IMS informed Aubuschon, however, that it would no longer replace his missing tools and that he would have to accept and use the specific tools supplied. Aubuschon, in turn, asked for invoices for the tools to insure them.

On May 13, 1983, after IMS furnished Aubuschon with replacement tools and the accompanying invoices, Aubuschon took the tools and invoices to the supplier, National Auto Supply. According to IMS, Aubuschon attempted to turn the tools in for money. Aubuschon claims he only wanted to exchange them for different tools. A clerk at National Auto Supply refused to accept the tools after talking to IMS.

Approximately 11 days later, Aubuschon's superintendent, also a defendant in this matter, met with Aubuschon and the union president to give them copies of a notice of discipline. The notice stated that Aubuschon was suspended five days pending discharge for attempting to sell back the tools. Aubuschon was discharged on May 31, 1983. Again, in accordance with the provisions of the collective-bargaining agreement, Aubuschon filed a written grievance protesting his discharge. The grievance was submitted to arbitration, whereupon the arbitrator issued his decision, reinstating Aubuschon without back pay. According to the collective-bargaining agreement, decisions of the arbitrator are final and binding upon IMS, the union and all employees concerned.

Upon being reinstated, Aubuschon filed this action for defamation in the circuit court of Madison County based upon the alleged publication of his disciplinary action notice. IMS and the superintendent filed a motion for summary judgment claiming preemption under Federal labor law. The circuit court denied the motion from which defendants now appeal. We reverse, finding that Aubuschon's cause of action for defamation is preempted under Federal labor law by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. §185 (1982).

■■ ■ By virtue of the supremacy clause of article VI of the Federal Constitution (U.S. Const., art. VI, cl. 2), Federal law, in most instances, overrides or preempts State law on the same subject matter. (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 208, 85 L. Ed. 2d 206, 213, 105 S. Ct. 1904, 1909; *Bartley v. University Asphalt Co.* (1986), 111 Ill. 2d 318, 327, 489 N.E.2d 1367, 1371.) Section 301 of the LMRA vests jurisdiction in the Federal courts for actions alleging violations of labor contract provisions or breaches of collective-bargaining agreements. (*Allis-Chalmers*, 471 U.S. at 210, 85 L. Ed. 2d at 215, 105 S. Ct. at 1911; *Green v. Hughes Aircraft Co.* (S.D. Cal.

1985), 630 F. Supp. 423, 426.) Therefore, any State action, whether it be in tort or contract, alleging such violations is preempted. (*Bartley*, 111 Ill. 2d at 328, 489 N.E.2d at 1371.) But the scope of preemption under section 301 is not limited solely to violations and breaches. Any State law which attempts to define the meaning of a term in a labor contract or the relationship created by a collective-bargaining agreement necessarily is preempted also. (*Allis-Chalmers*, 471 U.S. at 210-11, 85 L. Ed. 2d at 215, 105 S. Ct. at 1911.) Consequently, when resolution of a cause of action is substantially dependent upon analysis of the terms or upon the interpretation of a labor agreement, the claim is preempted. (*Lingle v. Norge Division of Magic Chef, Inc.* (7th Cir. 1987), 823 F.2d 1031, 1042, *cert. granted* (1987), ___ U.S. ___, 98 L. Ed. 2d 185, 108 S. Ct. 226; *Bartley*, 111 Ill. 2d at 330-32, 489 N.E.2d at 1372-73.) The issue before us then is whether Aubuschon's claim is sufficiently independent of the collective-bargaining agreement to withstand the preemptive force of section 301.

Aubuschon argues the notice of discipline suspending him pending discharge was defamatory and therefore within the purview of State tort law. What Aubuschon fails to recognize is that this notice and its publication to his union specifically were contemplated by a collective-bargaining agreement and grievance procedure. The statements were directly related to his suspension and discharge and specifically invoked articles of the collective-bargaining agreement. (See *Suffel v. Manville Building Materials* (N.D. Ohio February 24, 1986), No. C85—7650, slip op. at 11.) They not only intertwined with IMS' right to discipline for proper cause and with the contractual requirement that statements of discipline be furnished to and in the presence of the union, but also with the contractual requirement that employees abide by IMS plant rules and with labor and management's right to resolve disputes openly in accordance with the collective-bargaining agreement. (See *Green*, 630 F. Supp. at 427.) Moreover, the statements also intertwined with the agreement between IMS and the union settling Aubuschon's grievance concerning replacement of missing tools. As such, Aubuschon's claim necessarily arises out of the collective-bargaining agreement and therefore is preempted. See *Scott v. Machinists Automotive Trades District Lodge No. 190* (9th Cir. 1987), 827 F.2d 589, 594; *Stallcop v. Kaiser Foundation Hospitals* (9th Cir. 1987), 820 F.2d 1044, 1049, *cert. denied* (1987), ___ U.S. ___, 98 L. Ed. 2d 502, 108 S. Ct. 504; *Strachan v. Union Oil Co.* (5th Cir. 1985), 768 F.2d 703, 706-07; *Peffley v. Durakool, Inc.* (N.D. Ind. 1987), 669 F. Supp. 1453, 1462. See also *Hasten v. Phillips Petroleum Co.* (10th Cir. 1981), 640 F.2d 274, 276-78 (discharge letter required by agree-

ment privileged). *Cf. Tellez v. Pacific Gas & Electric Co.* (9th Cir. 1987), 817 F.2d 536, 538, *cert. denied* (1987), ___ U.S. ___, 98 L. Ed. 2d 209, 108 S. Ct. 251.

■ Regardless of how Aubuschon characterizes his cause of action, resolution is dependent upon analysis of the collective-bargaining agreement between IMS and the union, as well as upon the agreement settling his grievance regarding missing tools. If Aubuschon were allowed to proceed with State tort claims for defamation in this instance, grievance arbitration procedures would be rendered meaningless and the entire Federal framework of collective-bargaining would be undermined. (See *Allis-Chalmers*, 471 U.S. at 219, 85 L. Ed. 2d at 220, 105 S. Ct. at 1915; *Lingle*, 823 F.2d at 1046-47; *Green*, 630 F. Supp. at 427; *Perkins v. Pepsi-Cola General Bottlers, Inc.* (1987), 158 Ill. App. 3d 893, 899, 511 N.E.2d 901, 905.) To hold that Aubuschon's claims are sufficiently independent of the collective-bargaining agreement would elevate form over substance and allow him to evade the requirements of Federal labor law. *Allis-Chalmers*, 471 U.S. at 211, 85 L. Ed. 2d at 215, 105 S. Ct. at 1911.

Aubuschon points out three cases, *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 503 N.E.2d 308, *cert. denied* (1987), 483 U.S. ___, 97 L. Ed. 2d 779, 107 S. Ct. 3248, *Krasinski v. United Parcel Service, Inc.* (1987), 155 Ill. App. 3d 831, 508 N.E.2d 1105 (petition for leave to appeal granted) (1987), 116 Ill. 2d 559, and *Fisher v. Illinois Office Supply Co.* (1984), 130 Ill. App. 3d 996, 474 N.E.2d 1263, which arguably support his position. These cases, however, are distinguishable.

*Gonzalez v. Prestress Engineering Corp.* focuses on two employees who alleged that they were discharged in retaliation for filing workers' compensation claims. Because the resolution of their claims did not depend upon an interpretation of a labor agreement and because the gravaman of their claims arose out of an alleged violation of clearly mandated public policy, their claims were not preempted by section 301. (*Gonzalez*, 115 Ill. 2d at 9-12, 503 N.E.2d at 311-13.) Here, however, resolution of Aubuschon's claim is substantially dependent upon interpretation of the terms of a collective-bargaining agreement and his cause of action does not involve a discharge in violation of clearly mandated public policy. The reasoning of *Gonzalez* therefore is inapplicable to the instant situation.

The Third District, in both *Fisher* and *Krasinski*, on the other hand, has determined that malicious defamation claims are not preempted by Federal labor law. Both cases, however, involved instances of actual malice outside the scope of the collective-bargaining agree-

ments. Neither case involved claims in which resolution was substantially dependent upon analysis of the terms of the respective labor agreements, and, as a result, also are inapposite to the cause of action before us. We choose not to follow the reasoning in either *Fisher* or *Krasinski*, finding the reasoning of cases such as *Green* to be more in line with the Supreme Court's decision in *Allis-Chalmers* and with the general policies behind preemption in connection with collective-bargaining agreements.

Because of our finding Aubuschon's defamation claim to be preempted under section 301 of the LMRA, we need not address the issue of preemption under sections 7 and 8 of the National Labor Relations Act, 29 U.S.C. §§157, 158 (1982). Suffice it to say, we do not believe Aubuschon's cause of action falls within the narrow exceptions to preemption found in *Linn v. United Plant Guard Workers* (1966), 383 U.S. 53, 15 L. Ed. 2d 582, 86 S. Ct. 657, or in *Farmer v. United Brotherhood of Carpenters & Joiners of America, Local 25* (1977), 430 U.S. 290, 51 L. Ed. 2d 338, 97 S. Ct. 1056. See *Green*, 630 F. Supp. at 427 n.1.

For the aforementioned reasons, we find that Aubuschon's cause of action against IMS and his superintendent is preempted by Federal labor law. The trial court therefore lacked jurisdiction over the subject matter of this action (see *Sagen v. Jewel Companies, Inc.* (1986), 148 Ill. App. 3d 447, 450, 499 N.E.2d 662, 664) and should have granted the motion for summary judgment. We therefore reverse the order of the circuit court of Madison County and remand this cause for entry of summary judgment in favor of defendants.

Reversed and remanded with directions.

HARRISON, P.J., and WELCH, J., concur.