Willard A. THOMPSON,
Plaintiff–Appellant,

v.

PUBLIC SERVICE COMPANY OF COLORADO, a corporation; and R.M. Richards, a/k/a Mark Richards, Defendants–Appellees.

No. 87CA0777.

Colorado Court of Appeals,
Div. III.

Dec. 15, 1988.

Rehearing Denied Feb. 2, 1989.

Certiorari Granted May 30, 1989.

Joseph P. Genchi, P.C., Joseph P. Genchi, Estes Park, for plaintiff-appellant.

Kelly, Stansfield & O'Donnell, Kevin W. Hecht, David W. Kerber, Denver, for defendants-appellees.

CRISWELL, Judge.

Plaintiff, Willard A. Thompson, appeals the summary judgment that dismissed his libel action against defendants, Public Service Company (PSC) and R.M. Richards, a PSC supervisor. The trial court entered the judgment because it concluded that defendants possessed a qualified privilege to publish the statements involved and that the undisputed evidence demonstrated that that privilege had not been abused. In the circumstances portrayed by this record, we conclude that the federal labor policy, as reflected in the applicable federal statutes, requires the recognition of an absolute privilege for defendants' statements. Thus, we affirm.

Plaintiff was employed by PSC in a collective bargaining unit of employees whose exclusive bargaining representative for purposes of the National Labor Relations Act, 29 U.S.C. § 151, et seq. (1982), was Local Union No. 111 of the International Brotherhood of Electrical Workers (IBEW). PSC and IBEW were parties to a collective bargaining agreement that governed the wages, hours of work, and other terms and conditions of employment for the employees within the bargaining unit, including plaintiff.

This agreement recognized PSC's right "to suspend, to discharge, or to discipline [employees] for proper cause," subject, however, to a disciplined employee's right to adjust any grievance relating to any discipline in accordance with the procedures described in the agreement. Under the agreement, the initial means for resolution of a grievance was to be by informal discussions between an employee and his immediate supervisor. If the dispute was not resolved in that manner, then a formal four-step procedure was followed. That procedure began with discussions between IBEW representatives and lower management representatives, progressed through discussions between higher level representatives, and culminated, if necessary, in binding arbitration.

In November 1983, plaintiff was sent to do maintenance work upon boilers that were located in the basement of a building. While waiting for other PSC employees to arrive at the building, plaintiff left the basement area, went to another floor, and attempted to speak with several female clerical employees who worked for another employer. This activity resulted in a supervisor of the clerical employees telephoning plaintiff's supervisor and complaining about plaintiff's activities. Plaintiff returned to PSC's premises and attended a meeting with his supervisor and an IBEW representative to discuss what had occurred.

After this conference, plaintiff was given a written notice that he was to be suspended from his job without pay for five days. This notice reviewed previous disciplinary actions taken against plaintiff for other incidents and asserted that the present suspension was being imposed because of his "creating a nuisance for customer employees and *sexual harassment* and/or unwanted contact of customer employees." (emphasis supplied) A copy of this notice was provided to IBEW, to plaintiff's second and third level supervisors, and to PSC's labor relations department, and a copy was placed in plaintiff's personnel file. There was no competent evidence submitted to the trial court that PSC furnished any other person with a copy of this notice.

Plaintiff invoked the contract's formal grievance procedures to protest this suspension and, at the second step, the matter was considered and resolved by a joint union-management committee, consisting of three PSC representatives and three IBEW representatives. Both plaintiff and his immediate supervisor were present as witnesses and a member of PSC's labor relations staff was also present as an observer. After considering the matter, it was agreed that plaintiff's grievance would be finally settled by reducing his suspension from 5 days to 2 days and by removing the word "sexual" from the written notice previously issued to him. In return, plaintiff agreed that he would receive counseling through one of PSC's internal employee assistance programs.

Approximately eight months later, plaintiff was absent from work because of an illness. PSC's working rules required such an absent employee to present a physician's statement attesting to his illness upon his return to work. Plaintiff failed to provide such a statement, and he marked his time card for the period of his absence as "sick leave," which would have resulted in his being paid during his absence.

As a result of this incident, a "written reprimand" was issued to plaintiff in a form similar to his previous notice of suspension. This document noted that plaintiff had failed to comply with PSC's re-

quirement for a doctor's statement on previous occasions and that he had been told that a future infraction of that rule would result in his failure to be paid for his absence. It concluded that, under these circumstances, plaintiff's marking of his time card in the manner in which he did constituted a "falsification" of that time card. A copy of this written reprimand was provided to the same parties as were provided copies of the previous notice of suspension. Again, there was no evidence presented that anyone else received a copy of this reprimand.

It is not clear whether plaintiff invoked the contract's formal grievance procedures to protest this written reprimand or whether he undertook to adjust his objection to it in an informal manner. In any event, he contacted his third level supervisor, who would have been involved in any formal grievance proceeding, and that supervisor directed that an amended letter of reprimand be issued to plaintiff to remove any reference to a falsification of his time card.

Plaintiff's complaint in libel contained two claims, based upon these two written notices. The trial court concluded, however, that the two statements upon which plaintiff relied to establish actionable defamation were each subject to the qualified privilege that attaches to job-related statements made by an employer about an employee. *See Dominguez v. Babcock*, 727 P.2d 362 (Colo.1986); *Price v. Conoco, Inc.*, 748 P.2d 349 (Colo.App.1987). It also concluded that the undisputed facts demonstrated that the statements were not made with a knowledge of their falsity or with a reckless disregard thereof, *see Dominguez v. Babcock, supra*, and that they were not published to persons outside the interested group. *See Patane v. Broadmoor Hotel, Inc.*, 708 P.2d 473 (Colo.App.1985).

Plaintiff argues that his evidence showed that his supervisor made each statement without conducting a sufficient investigation, so that a reasonable inference could be drawn that that supervisor had acted with a reckless disregard of the truth of those statements, thereby rendering summary judgment inappropriate. However,

because we conclude that the statements were subject to an absolute privilege and that the evidence demonstrates that that privilege was not abused, we affirm the trial court's judgment without passing upon the question of the existence of malice under *Dominguez v. Babcock, supra.*

■ When Congress adopted § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1982), it granted jurisdiction to the federal courts to adjudicate claimed violations of collective bargaining agreements. While perhaps not evident on its face, § 301 contains a mandate to the federal courts to fashion a body of federal law applicable to union contracts. *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Moreover, the state courts must apply the tenets of the substantive federal law developed under § 301 to the exclusion of any inconsistent state law that might otherwise be applicable. *Teamsters Local No. 174 v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Digby v. Denner,* 156 Colo. 260, 398 P.2d 30 (1965).

■ One of the basic principles of the federal law relating to union contracts is that, where such a contract contains a provision that calls for the reference of disputes arising under its terms to binding arbitration, courts lack jurisdiction to intervene in such disputes. *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Thus, where the parties have committed disputes relating to the interpretation of a bargaining agreement to the jurisdiction of an arbitrator, no state may authorize the assertion of a state law claim, whether grounded in contract or in tort, that would require an interpretation or application of the terms of that agreement by a tribunal other than the arbitrator. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).

If an alleged libel takes the form of a statement by an employer to justify the imposition of discipline upon an employee under a union contract, and the question of the propriety of that discipline may be made the subject of binding contractual grievance and arbitration procedures, those procedures must necessarily result in the consideration and resolution of the issues of the truth of the statement made and the propriety under the contract of the discipline imposed. Further, the underlying purposes of such grievance and arbitration procedures require that the parties to those procedures be encouraged to engage in a full, free, and frank discussion of their positions. *See General Motors Corp. v. Mendicki,* 367 F.2d 66 (10th Cir.1966).

■ For these and similar reasons, it has been held that the national labor policy requires the recognition of an absolute privilege for any statements that are germane to the subject made to persons involved in contractual grievance proceedings under a collective bargaining agreement. And, this privilege extends both to those statements made during conferences or hearings conducted pursuant to those proceedings, *General Motors Corp. v. Mendicki, supra,* and to written notices of discipline which "trigger" the initiation of such proceedings. *Hasten v. Phillips Petroleum Co.,* 640 F.2d 274 (10th Cir.1981). *Accord Surrency v. Harbison,* 489 So.2d 1097 (Ala.1986); *Aubuschon v. International Mill Service,* 167 Ill.App.3d 965, 119 Ill.Dec. 236, 522 N.E.2d 898 (1988); *Louisville & Nashville Ry. Co. v. Marshall,* 586 S.W.2d 274 (Ky.App.1979); *Rougeau v. Firestone Tire & Rubber Co.,* 274 So.2d 454 (La.App.1973); *Fulghum v. United Parcel Service,* 424 Mich. 89, 378 N.W.2d 472 (1985); *Turner v. Gateway Transportation Co.,* 569 S.W.2d 358 (Mo.App.1978); *Kloch v. Ratcliffe,* 221 Neb. 241, 375 N.W.2d 916 (1985) (equating statements in grievance proceedings to statements in judicial proceedings); *Neece v. Kantu,* 84 N.M. 700, 507 P.2d 447, 60 A.L.R.3d 1030 (App. 1973); *Bailey v. Sams,* 24 Ohio App.3d 137, 493 N.E.2d 966 (1985); *Agriss v. Roadway Express Co.,* 334 Pa.Super. 295, 483 A.2d 456 (1984). *Contra Tellez v. Pacific Gas & Electric Co.,* 817 F.2d 536 (9th Cir.1987) (if contract does not require notice of discipline to be placed in writing, only qualified

privilege recognized), *cert. denied,* —— U.S. ——, 108 S.Ct. 251, 98 L.Ed.2d 209 (1987); *Ezekiel v. Jones Motor Co.,* 374 Mass. 382, 372 N.E.2d 1281 (1978) (qualified privilege); *Bird v. Meadow Gold Products Corp.,* 60 Misc.2d 212, 302 N.Y.S.2d 701 (1969) (qualified privilege).

■ In this case, the written notice, in each instance, described the nature of the discipline being imposed upon plaintiff, set forth the employer's reasons which it considered to be the "proper cause" for the discipline, and gave the effective date of the employer's action. While there is no evidence that the contract *required* such a written notification, the contract also does not prohibit the notice of discipline from being placed in written form. Indeed, since the contract requires the employer to demonstrate "proper cause" for any discipline imposed and sets a time limit for the employee to invoke the grievance procedure, the issuance by PSC of a written notice, in lieu of reliance upon an oral statement of a supervisor, lessens the possibility of misunderstanding among the parties and increases the degree of industrial due process that a disciplined employee is accorded. In light of the purposes to be served by a recognition of an absolute privilege for such statements, the fact that the pertinent contract does not require a written statement by the employer is, in our view, of little relevance. But *compare Hasten v. Phillips Petroleum Co., supra, with Tellez v. Pacific Gas & Electric Co., supra.*

■ In addition, the undisputed evidence also demonstrates that PSC did not abuse its absolute privilege. In *Patane v. Broadmoor Hotel, Inc., supra,* it was held that an employer had a qualified privilege to publish to all co-employees the reasons for the termination of an employee, since all employees shared a common interest in information relating to the "turnover or status of personnel." *Accord Denver Public Warehouse Co. v. Holloway,* 34 Colo. 432, 83 P. 131 (1905). *See* Restatement of Torts (Second) § 596 (1979).

■ However, the absolute privilege recognized here exists among a substantially smaller group. In order to preserve this privilege, the statement's publication must be limited to those persons who have a direct interest in the subject of the dispute or in the labor-management functions involved in the contractual procedures. *See Hasten v. Phillips Petroleum Co., supra.*

Here, PSC limited the publication of the notices to plaintiff and his collective bargaining agent, its labor relations staff, and supervisors who would become involved in the grievance proceedings if plaintiff elected to invoke those procedures. Each of the persons receiving the notices had a legitimate job-related interest in the dispute or in any future grievance proceedings that might be scheduled. Thus, the absolute privilege that the national labor policy requires to be recognized was not abused here.

JUDGMENT AFFIRMED.

VAN CISE and STERNBERG, JJ., concur.