HART FISHER, Plaintiff-Appellant, v. ILLINOIS OFFICE SUPPLY COMPANY et al., Defendants-Appellees.

Third District    No. 3—84—0272

Opinion filed December 31, 1984.—Rehearing denied February 8, 1985.

Darrell K. Seigler, of Kuleck & Seigler, of Ottawa, for appellant.

Michael T. Reagan, of Herbolsheimer, Lannon, Henson, Duncan & Reagan, P.C., of La Salle, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

On July 2, 1982, plaintiff filed an eight-count complaint in the circuit court of La Salle County. Named as defendants were Illinois Office Supply (plaintiff's former employer, hereinafter IOS), Sam Gilpin, Jr., an officer of IOS, Graphic Arts International Union, Local 107B (the Union), and Wayne Corcoran, president of the Union. Counts I through IV of the complaint allege that plaintiff's discharge on October 27, 1981, violated the collective bargaining agreement between IOS and the Union. These counts also allege that the Union breached its duty of fair representation in mishandling plaintiff's wrongful discharge grievance. Counts V through VIII are grounded upon an allegedly defamatory letter published by Gilpin, as agent for IOS, to the Union. All counts were dismissed upon defendants' motions. This appeal follows.

Plaintiff was a member in good standing of the Union. The collective bargaining agreement between IOS and the Union contained a typical "just cause" standard for discharge of employees. Plaintiff was discharged on October 27, 1981, for allegedly falsely representing the replacement of photo chemicals previously borrowed. Under the collective bargaining agreement, plaintiff was entitled to grieve his discharge to a joint management-labor standing committee. As part of the procedure for processing such grievances, management submits in writing to the Union a statement of reasons for the discharge. The letter from Gilpin to the Union explaining the reason for plaintiff's discharge is the subject of counts V through VIII of this action. The asserted failure to handle his grievance properly, along with the alleged wrongful discharge, forms the basis of counts I through IV. Plaintiff's grievance was denied by the committee on December 7, 1981.

Counts I through IV represent the typical "hybrid" action recognized by the United States Supreme Court in *Vaca v. Sipes* (1967), 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903. There, it was held that where a collective bargaining agreement provides the exclusive remedy for wrongful discharge, no action in State or Federal court for breach of the agreement could be maintained. However, where the Union had failed to process the grievance or had handled the grievance in an arbitrary or perfunctory manner (*Hines v. Anchor Motor Freight, Inc.* (1976), 424 U.S. 554, 47 L. Ed. 2d 231, 96 S. Ct. 1048), an action against both the employer and union could be maintained pursuant to 29 U.S.C. section 301.

Defendants' motion to dismiss counts I through IV was granted on the basis of the six-month statute of limitations announced in

*DelCostello v. International Brotherhood of Teamsters* (1983), 462 U.S. 151, 76 L. Ed. 2d 476, 103 S. Ct. 2281. In response to an increasingly confusing situation surrounding the proper statute of limitations to apply to wrongful discharge/fair representation suits (see, *e.g., United Parcel Service, Inc. v. Mitchell* (1981), 451 U.S. 56, 67 L. Ed. 2d 732, 101 S. Ct. 1559), the court created a uniform six-month standard based on section 10(b) of the National Labor Relations Act (29 U.S.C. sec. 160(b) (1982)). As the complaint at issue here was filed over six months after the denial of plaintiff's grievance, *DelCostello* clearly applies.

■ Plaintiff appears to assert that the six-month limitations period should be tolled on account of the concurrent filing of unfair labor practice charges with the National Labor Relations Board. While a union's breach of its duty of fair representation may be the basis of an unfair labor practice charge, *Miranda Fuel Co.* (1962), 140 N.L.R.B. 181, *enforcement denied* (2d Cir. 1963), 326 F.2d 172, there is no good reason to toll the statute merely because similar charges have been filed. The rights to be vindicated and remedies available from these separate actions are sufficiently independent that the filing of one should not affect the other. Recent cases interpreting *DelCostello* and possible tolling of the statute are in accord. (*Aarsvold v. Greyhound Lines* (8th Cir. 1983), 724 F.2d 72; *Marston v. LaClede Cab Co.* (E.D. Mo. 1983), 571 F. Supp. 1243.) Accordingly, we affirm the dismissal of counts I through IV.

■ The court below dismissed counts V through VIII based on an absolute Federal privilege for statements made in the course of grievance and arbitration proceedings. Plaintiff's challenge to this ruling is that a motion to dismiss under section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—619) is not the proper vehicle for resolution of this issue. We disagree. Section 2—619(a)(9) provides for involuntary dismissal where it appears that the claim asserted against the defendant is barred by "affirmative matter avoiding the legal effect of the claim." In his affidavit in support of the motion, defendant Gilpin alleged that the circulation of the letter explaining plaintiff's discharge was done to fulfill obligations under the collective bargaining agreement, that the letter was not circulated to anyone arguably beyond the scope of the asserted privilege, and that the letter was prepared for use in the grievance procedure established by the collective bargaining agreement. No counteraffidavit was filed by plaintiff. In the context of dismissing counts V through VIII on the finding of an absolute privilege, the trial court had before it no facts which would prevent the entry of judgment against plaintiff.

Nonetheless, we are disposed to extend our inquiry beyond the briefs to determine the applicability *vel non* of an absolute privilege to the communication at issue. It should first be noted that no Illinois court has considered this question in the light of modern Federal preemption doctrine (*cf. Chaloupka v. Lacina* (1939), 301 Ill. App. 173).

The traditional approach to questions of Federal preemption comes from *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773. Two general guidelines were expressed. If the activity in question was arguably protected or prohibited by the National Labor Relations Act, then State court action would ordinarily be preempted. However, if the activity in question touched interests deeply rooted in local feeling and responsibility, or if the activity was of "peripheral concern" to the policies underlying the Act, then Federal preemption did not necessarily apply.

The hallmark of the *Garmon* doctrine, according to later cases, was its flexibility.

> "[T]he decision to pre-empt *** state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor polices." *Vaca v. Sipes* (1967), 386 U.S. 171, 180, 17 L. Ed. 2d 842, 852, 87 S. Ct. 903, 911.

The application of Federal preemption to State tort claims has been addressed by the United States Supreme Court. In *Linn v. United Plant Guard Workers of America* (1966), 383 U.S. 53, 15 L. Ed. 2d 582, 86 S. Ct. 657, the court ruled that an action for libel which occurred in the course of a labor dispute was not preempted. However, in order to ensure that the national policy of free and open communications during labor disputes was not chilled, the actual malice standard of *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, was held applicable to causes of action for libel and slander arising out of such disputes. In *Farmer v. United Brotherhood of Carpenters & Joiners of America* (1977), 430 U.S. 290, 51 L. Ed. 2d 338, 97 S. Ct. 1056, an action for intentional infliction of emotional distress was held not preempted. One of the important points that came out of *Farmer* was that one of the allegedly wrongful acts fell clearly within conduct expressly prohibited by the National Labor Relations Act. The court, while allowing the action, expressed concern that a resolution of the State tort action required an adjudication of the "merits" of the unfair labor practice. This mode of analysis took hold in *Sears, Roebuck & Co. v. San Diego County District Council of Carpenters* (1978), 436 U.S. 180, 56 L. Ed.

2d 209, 98 S. Ct. 1745. Sears brought a trespass action against the union after the union refused to cease picketing on Sears' property. A preliminary injunction was entered. The union appealed, claiming that questions of the legality of conduct which arguably amounted to either prohibited organizational and recognitional picketing or protected activity under section 7 of the Act (29 U.S.C. sec. 157 (1976)), fell within the exclusive jurisdiction of the N.L.R.B. The court upheld the validity of the injunction. The primary concern in the State court proceedings was the location of the picketing, while the focus of N.L.R.B. proceedings would be the purpose and character of the picketing. Thus, no realistic interference with national labor policy could be found by allowing the State court to address those aspects of the picketing which are traditionally the subject of State law.

Before analyzing the case at bar, it must be pointed out that the cases previously discussed are not entirely on point here. *Linn, Farmer* and *Sears, Roebuck & Co.* discuss the extent to which sections 7 and 8 of the National Labor Relations Act (29 U.S.C. secs. 157-158) preempt State tort actions. Here, the issue is whether the Federal policy of encouraging collective bargaining and arbitration of grievances preempts a State cause of action. Suffice to say that the national labor relations policy as expressed in cases concerning those processes is every bit as strong as the policies expressed in sections 7 and 8 of the Act. See *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347.

The principal exponent of Federal preemption of defamation actions stemming from the grievance and arbitration process is the United States Tenth Circuit Court of Appeals. In *General Motors Corp. v. Mendicki* (10th Cir. 1966), 367 F.2d 66, and later in *Hasten v. Phillips Petroleum Co.* (10th Cir. 1981), 640 F.2d 274, the court held that statements made in contexts similar to those as the case at bar were absolutely privileged. Significant reliance was placed on the concern expressed in *Farmer* that adjudication of the merits of the underlying labor dispute would occur in the State court rather than at the arbitration proceeding. This was thought to be particularly troubling where the allegedly defamatory communication was a statement of reasons given for the employee's discharge.

However, several State courts which have faced this issue have ruled that only a qualified privilege applied to this kind of communication. In *Ezekiel v. Jones Motor Co.* (1978), 374 Mass. 382, 372 N.E.2d 1281, plaintiff brought suit against his employer for statements made by an agent of the employer at plaintiff's arbitration hearing. Plaintiff

had been discharged for theft. The employee's agent stated that he had witnessed the act of theft. Specifically rejecting the *Mendicki* absolute privilege, the Supreme Judicial Court of Massachusetts chose to apply only a qualified privilege as New York had previously done. (*Bird v. Meadow Gold Products Corp.* (1969), 60 Misc. 2d 212, 302 N.Y.S.2d 701.) Earlier, the Supreme Court of Maryland had applied only a qualified privilege to a statement of charges given to the employee and his union. (*Henthorn v. Western M Ry. Co.* (1961), 226 Md. 499, 174 A.2d 175.) *Henthorn* is particularly significant in that this communication was mandated by a collective bargaining agreement which was executed in accordance with the guidelines of the Railway Labor Act (45 U.S.C. sec. 153 (1982)) in this area.

■ Employing the *Sears, Roebuck & Co.* preemption analysis, we conclude that an absolute privilege is not available to defendant here. There is little doubt that the protection of an individual's interest in his reputation is a deep and traditional concern of the State of Illinois. Furthermore, there is only a peripheral Federal concern in this area. We believe that *Linn* adequately expresses the Federal interest in defamation actions arising out of labor disputes. Thus, the only factor remaining is the extent to which a State court judgment in this case would adjudicate the merits of the underlying labor dispute. Keeping in mind that *Linn* requires plaintiff to meet an actual malice standard in this case,[1] it appears that the defamation action addresses matters of State concern well beyond the scope of the arbitration proceeding. The question of defendant's state of mind, particularly as it pertains to a possible award of punitive damages, is of paramount importance to the State's interest in deterring malicious libels. The nature and extent of injury to plaintiff's reputation, as well as mental pain and suffering, are significant issues that only the State court could resolve. It is true that an adjudication of the issue of truth or falsity of the communication would cause some interference with the Federal policy favoring the resolutions of these questions in arbitration. However, the preemption doctrine should not be used as a shield to protect malicious falsehoods where the State has an overriding interest in protecting its citizens from the damage which these falsehoods inevitably cause. Therefore, we conclude that an absolute privilege is not available as a defense to counts V through VIII. Instead, we find that the traditional qualified constitutional privilege as ex-

---

[1]Even if *Linn* were to be distinguished on the facts, the actual malice standard would probably still have to be met under the recent decision in *Colson v. Stieg* (1982), 89 Ill. 2d 205, 433 N.E.2d 246.

pressed in *Linn* and *Colson* applies here. Thus, in order for plaintiff to prevail on counts V through VIII, he must prove that defendant Gilpin knew the letter to be false when published or published it with reckless disregard for its truth or falsity.

Accordingly, we affirm the dismissal of counts I through IV. The dismissal of counts V through VIII is reversed, and we remand for further proceedings in accordance with this opinion.

Affirmed in part; reversed in part.

SCOTT and STOUDER, JJ., concur.