GERALD KRASINSKI, Plaintiff-Appellant, v. UNITED PARCEL SERVICE, INC., *et al.*, Defendants-Appellees.

Third District   No. 3—86—0597

Opinion filed May 21, 1987.

Cynthia M. Raccuglia, of Anthony C. Raccuglia & Associates, of Peru, for appellant.

Keith J. Braskich, of Keck, Mahin & Cate, of Peoria, and John A. McDonald, of Keck, Mahin & Cate, of Chicago, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

This case is on appeal from the trial court's dismissal of plaintiff's first amended complaint. The court found that plaintiff's claim of defamation alleging actual malice on the part of defendants was preempted by Federal labor law.

The complaint in this case alleging unlawful discharge and defamation was filed on January 28, 1982. The allegations regarding the discharge were dismissed on June 11, 1982, but the defamation claims survived. Defendants subsequently filed a motion for summary judgment alleging, among other things, that the communications upon

which the defamation action was based were privileged. The trial court denied the motion on February 7, 1984, finding that while a qualified privilege was afforded to the defendants, there was a genuine question of fact as to whether the statements were made with actual malice.

On April 9, 1985, the trial court ordered plaintiff to file an amended complaint in order to clarify certain issues for trial purposes. The amended complaint was filed on January 22, 1986. Thereupon, defendants moved to dismiss the amended complaint based upon Federal preemption. The motion was granted on August 8, 1986.

The allegations of defamation with actual malice surround an incident occurring on or about October 7, 1981. At that time the plaintiff was an employee for defendant United Parcel Service (UPS), Defendant Frank Wise was a loss prevention supervisor with UPS, and defendant Bill Fields was Wise's supervisor. Count I of plaintiff's first amended complaint is directed against UPS alleging that certain agents of UPS accused the plaintiff of theft and that such statements were made with actual malice. Specifically, count I alleges that Frank Wise, in the presence and hearing of various persons, including Bill Fields and Bob Lee, the plaintiff's immediate boss, made the following statement:

"I have a signed statement from Gale Koehler that you sold him the saw, and that you knew it was hot."

Frank Wise further stated:

"We are going to have to terminate him [meaning the plaintiff], Bob, because this is a U.P.S. shipment and Jerry [plaintiff] stole the saw."

It is further alleged that Bill Fields made the following defamatory statements in the presence and hearing of various persons:

"He [meaning the plaintiff] will have to be terminated for dishonesty."

All of the above statements were allegedly made maliciously in that they were made knowing they were false and/or with reckless disregard of the truth. The alleged motivation for the statements was that UPS, through its agents, had the intention of causing the plaintiff's discharge because an earlier wrongdoing could not be substantiated and the plaintiff was an active spokesman for employee rights in the union. Further, that the statements were said meaning and intending to charge that the plaintiff had feloniously stolen, taken, and carried away a certain chain saw from UPS.

Count II alleges that on October 9, 1981, UPS through its agent and employee, James Dobbins, caused to be sent to the plaintiff's union and other agents and employees of UPS a notice of plaintiff's termina-

tion from his employment for a "dishonest act." It is alleged by plaintiff that the aforesaid words contained in said notice were said meaning and intending to charge that the plaintiff was a dishonest and thieving person and with actual malice and with the same motivations as previously described.

Counts III and IV are directed against Frank Wise and Bill Fields individually. The counts allege that respective statements made by Wise and Fields quoted in count I were made with actual malice and for the same motivations as previously mentioned.

The trial judge's ruling that the complaint was preempted by Federal law was apparently based on reasoning cited in *Green v. Hughes Aircraft Co.* (S.D. Cal. 1985), 119 L.R.R.M. (BNA) 3610, in which the court was faced with a situation where an employee of Hughes Aircraft Company (Hughes) was accused by Hughes of taking a sandwich from Hughes' cafeteria without paying for it. As required by the collective-bargaining agreement, Hughes' management consulted with the union before acting. Upon a preliminary investigation, the plaintiff was temporarily suspended, since the allegations, if proved, were grounds for a discharge under the collective-bargaining agreement. During the investigation the union and Hughes jointly interviewed witnesses and, in light of conflicting testimony, Hughes decided not to pursue the matter. Plaintiff was then reinstated with back pay, overtime, and a formal letter of apology. Plaintiff subsequently filed an action for the alleged defamatory statements made by Hughes and ARA Services, Inc. (which operated Hughes' employee cafeteria) that were published within the incident's initial report and subsequent investigation.

Hughes removed the matter alleging Federal question jurisdiction under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. sec. 185 (1976). Specifically, that plaintiff's exclusive remedy was the grievance/arbitration mechanism under her collective-bargaining agreement and a section 301 action for breach of that agreement.

The trial judge in the instant case found the following language in *Green* dispositional of the question presented here:

"[T]here is no dispute that the alleged defaming statements are those concerning the purported theft. *** Plaintiff has not contraverted [*sic*] defendants' showing that these statements were uttered and published within the context of the incident's initial report and subsequent investigation. Nor has plaintiff contraverted [*sic*] defendants' showing that the discipline of a unit employee is governed by the controlling collective bargaining agreement. That agreement contains provisions for discipline for just cause, and for grievance/arbitration of disputes arising out

of the collective bargaining relationship. Accordingly, the statements plaintiff challenges are central rather than tangential to rights and procedures provided under the collective bargaining agreement. They intertwine not only with management's right to discipline for cause, but also with labor and management's right to resolve disputes openly in accordance with their private agreement. As such, countenance of the instant tort claim would impinge upon the primary federal labor policy favoring the expeditious resolution of labor disputes by private grievance/arbitration." (*Green v. Hughes Aircraft Co.* (S.D. Cal. 1985), 119 L.R.R.M. (BNA) 3610, 3612.)

Therefore, the trial judge dismissed the present action.

■ There have evolved two types of Federal preemption over State torts in the area of employer-employee relationships. The first type evolved under the case of *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773, and requires preemption whenever an activity is "arguably subject" to the jurisdiction of the National Labor Relations Board (NLRB), which is empowered to remedy violations of the National Labor Relations Act (NLRA). However, a State court does have jurisdiction to adjudicate State torts which may resemble unfair labor practices when resolution of the State tort does not threaten the primary jurisdiction of the NLRB and State interests outweigh any "peripheral" Federal concern. 359 U.S. 236, 243, 3 L. Ed. 2d 775, 782, 79 S. Ct. 773, 779.

The second type is Federal common law preemption under authority of section 301 of the LMRA, which arises when a State tort action is based upon the conduct of employees or employers pursuant to a union contract. The difference between the two types of preemption was distinguished by the United States Supreme Court in *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, wherein the court stated:

"So-called *Garmon* pre-emption involves protecting the primary jurisdiction of the NLRB; and requires a balancing of state and federal interests. The present tort suit would allow the State to provide a rule of decision where Congress has mandated that federal law should govern. In this situation the balancing of state and federal interests required by *Garmon* pre-emption is irrelevant, since Congress, acting within its power under the Commerce Clause, has provided that federal law must prevail." 471 U.S. 202, 214 n.9, 85 L. Ed. 2d 206, 217 n.9, 105 S. Ct. 1904, 1912 n.9.

■ ■ We are of the opinion that the instant case is clearly not

preempted by the primary jurisdiction of the NLRB under the United States Supreme Court decision of *Linn v. United Plant Guard Workers* (1966), 383 U.S. 53, 15 L. Ed. 2d 582, 86 S. Ct. 657, and this court's decision in *Fisher v. Illinois Office Supply Co.* (1984), 130 Ill. App. 3d 996, 474 N.E.2d 1263.

In *Linn*, the plaintiff, an officer of an employer which sought to be unionized by the defendant union, instituted an action in the United States District Court for the Eastern District of Michigan for libel based on defamatory statements published during a union organizing campaign by the union and its officers. The district court dismissed the count on the ground that the NLRB had exclusive jurisdiction over the subject matter.

Initially, the court cites *Garmon* for the standard to be used in determining whether the State action should be federally preempted. In this respect the *Garmon* court stated that State courts need not yield jurisdiction "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act *** [o]r where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." (*Linn v. United Plant Guard Workers* (1966), 383 U.S. 53, 59, 15 L. Ed. 2d 582, 588, 86 S. Ct. 657, 661, quoting *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 243-44, 3 L. Ed. 2d 775, 781-82, 79 S. Ct. 773, 778-79.) The court also noted that even the NLRB, which generally allows considerable leeway with regard to defamatory statements made during labor disputes between employees and employers, does not allow either party to injure the other intentionally by circulating defamatory or insulting material known to be false. *Linn v. United Plant Guard Workers* (1966), 383 U.S. 53, 61, 15 L. Ed. 2d 582, 589, 86 S. Ct. 657, 662.

Therefore, the court concluded that "a State's concern with redressing malicious libel is 'so deeply rooted in local feeling and responsibility' that it fits within the exception specifically carved out by *Garmon*." 383 U.S. 53, 62, 15 L. Ed. 2d 582, 589, 86 S. Ct. 657, 663.

In *Fisher*, the plaintiff alleged, in part, that a letter from the employer's agent to the union explaining the reason for plaintiff's discharge was defamatory in nature. The trial court dismissed the counts alleging defamation based on an absolute privilege for statements made in the course of grievance and arbitration proceedings. This court reversed holding that "the protection of an individual's interest in his reputation is a deep and traditional concern of the State of Illinois." (*Fisher v. Illinois Office Supply Co.* (1984), 130 Ill. App. 3d 996, 1001,

474 N.E.2d 1263, 1266.) The court further held that *Linn* adequately expressed "the Federal interest in defamation actions arising out of labor disputes." (130 Ill. App. 3d 996, 1001, 474 N.E.2d 1263, 1266.) Keeping in mind the actual malice standard announced in *Linn*, the court stated that the defamation action addressed concerns beyond the scope of the arbitration proceeding. Furthermore:

"It is true that an adjudication of the issue of truth or falsity of the communication would cause some interference with the Federal policy favoring the resolutions of these questions in arbitration. However, the preemption doctrine should not be used as a shield to protect malicious falsehoods where the State has an overriding interest in protecting its citizens from the damage which these falsehoods inevitably cause." 130 Ill. App. 3d 996, 1001, 474 N.E.2d 1263, 1266-67.

Based on *Linn* and *Fisher*, we are of the opinion that the present case is not preempted by the jurisdiction of the NLRB.

Whether plaintiff's cause of action is preempted by Federal common law under section 301 presents a more difficult question than that previously discussed. Section 301 states:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce *** may be brought in any district court of the United States having jurisdiction of the parties ***." 29 U.S.C. sec. 185(a) (1976).

Defendant asserts that the United States Supreme Court decision in *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, the Supreme Court of Illinois decision in *Bartley v. University Asphalt Co.* (1986), 111 Ill. 2d 318, 489 N.E.2d 1367, and the Federal district court decision in *Green v. Hughes Aircraft Co.* (S.D. Cal. 1985), 119 L.R.R.M. (BNA) 3610, are controlling.

In *Allis-Chalmers*, a unionized employee filed an action in State court against both his employer and the insurance company which administered the disability plan which was incorporated into the collective-bargaining agreement. A separate letter of understanding between the parties created a three-step grievance procedure for disputes concerning disability payments under the plan. The employee suffered a nonoccupational injury and started to receive disability payments under his insurance coverage through his employer. The employee later became dissatisfied with the manner in which the disability payments were being made and filed a State action alleging bad-faith handling of his disability claim. The Wisconsin Supreme Court found that the tort claim of bad faith was distinguishable from a bad-faith breach-of-con-

tract claim and thus concluded that the action was not preempted by section 301.

The United States Supreme Court reversed, finding that congressional policy favoring the administration of collective-bargaining agreements under a uniform body of Federal law required section 301 preemption to extend beyond suits for breach of a labor contract. To allow otherwise "would elevate form over substance and allow parties to evade the requirements of section 301 by relabeling their contract claims as claims for tortious breach of contract." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 211, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.) Therefore, if the State tort claim is "substantially dependent" upon analysis of the terms of a labor contract (471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916), or the State tort claim is "inextricably intertwined with consideration of the terms of the labor contract" (471 U.S. 202, 213, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912), the claim must either be dismissed as preempted by Federal labor law or treated as a breach of contract action under section 301.

The court, however, did state that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by section 301 or other provisions of the federal labor law." (471 U.S. 202, 211, 85 L. Ed. 2d 206, 215, 105 S. Ct. 1904, 1911.) Moreover, section 301 "does not grant the parties to a collective-bargaining agreement the ability to contract for what is illegal under State law. In extending the pre-emptive effect of section 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." 471 U.S. 202, 212, 85 L. Ed. 2d 206, 216, 105 S. Ct. 1904, 1912.

In *Bartley v. University Asphalt Co.* (1986), 111 Ill. 2d 318, 489 N.E.2d 1367, the Supreme Court of Illinois adopted the test used in *Allis-Chalmers* that a State tort claim must be "substantially dependent upon analysis of the terms of *** [the collective-bargaining] agreement." (111 Ill. 2d 318, 328, 489 N.E.2d 1367, 1373.) *Bartley* concerned an employee's tort action for civil conspiracy. The complaint alleged in relevant part that University Company (University) discharged plaintiff in retaliation for his involvement in an FBI investigation and that the discharge violated the "justifiable cause" provision of the collective-bargaining agreement. Further, that defendant union conspired with University to allow the retaliatory discharge.

The court determined, based on the reasoning in *Allis-Chalmers*, that the claim asserted by plaintiff was preempted by Federal labor

law.

Defendant's primary use of *Bartley* for authority is based on a citation to *Green v. Hughes Aircraft Co.* within *Bartley*, which ruled that a claim for defamation was preempted by section 301 of the LMRA. It is defendant's assertion that this citation to *Green* by the *Bartley* court is proof positive that if the Supreme Court of Illinois were faced with the same facts as in the instant case, it would require dismissal of plaintiff's defamation action based upon preemption under Federal common law. We do not agree with defendant's assertion.

In *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, the Supreme Court of Illinois again had the opportunity to consider *Allis-Chalmers* and its application to State tort claims. Both cases consolidated in *Gonzalez* involved a termination of an employee who had filed a workers' compensation claim with the Industrial Commission for injuries sustained while employed by Prestress Engineering Company (Prestress). Although plaintiff Gonzalez was denied an award by the arbitrator and plaintiff Repyak was awarded benefits, both were subsequently terminated by Prestress.

Both Gonzalez and Repyak were members of a union and covered by a collective-bargaining agreement between the union and Prestress. The agreement required "just cause" for discharge and established a four-step grievance procedure. Neither Gonzalez nor Repyak filed grievances. Instead, they filed separate complaints in the State circuit court alleging that Prestress had fired them in retaliation for their filing workers' compensation claims.

The circuit court in both cases dismissed the complaints for failure to state a cause of action and the appellate court affirmed. The Supreme Court of Illinois reversed and remanded the case in *Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, *cert. denied* (1985), 474 U.S. 909, 88 L. Ed. 2d 243, 106 S. Ct. 278, *cert. denied* (1985), 472 U.S. 1032, 87 L. Ed. 2d 642, 105 S. Ct. 3513. On remand, Prestress filed the affirmative defense of Federal preemption under section 301 of the LMRA. The Supreme Court of Illinois granted leave to appeal to consider Prestress' motion to dismiss based on Federal preemption in light of *Allis-Chalmers.*

The court distinguished both *Allis-Chalmers* and its prior decision in *Bartley* on the basis that the claims in both of those cases were a product of the labor contract between the parties, whereas the retaliatory discharge claims were "firmly rooted in the clearly mandated public policy of this State, which, regardless of the existence or absence of a collective-bargaining agreement, confers upon all employees and employers certain nonnegotiable rights and imposes certain nonnegotiable

duties and obligations." (*Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 9.) Further, that "[w]here *** the State tort claim is based on a duty and right firmly rooted and fixed in an important and clearly defined public policy, evaluation of the tort claim does not in any way depend upon an interpretation of the 'just cause' provision in a labor contract." 115 Ill. 2d 1, 10.

In the instant action, UPS asserts that nothing attacked by the complaint was done outside the scope of the labor contract; everything was part of the management-union process for handling disputes over employee misconduct pursuant to the labor contract. However, if the action asserted is one that is "firmly rooted" in public policy, then the action will stand regardless of whether resolution of the action will ultimately be determinative of issues that would be decided by an arbitrator. In *Fisher*, the court indicated that malicious defamations are indeed the types of claims which arise under the clear mandate of Illinois public policy and which exist independent of any privately negotiated contract rights or duties. "There is little doubt that the protection of an individual's interest in his reputation is a deep and traditional concern of the State of Illinois." *Fisher v. Illinois Office Supply Co.* (1984), 130 Ill. App. 3d 996, 1001, 474 N.E.2d 1263, 1266.

■ Defendant attempts to distinguish the effect of *Gonzalez* on the basis that *Gonzalez* involved a fundamental right, given by State law, to invoke the Illinois workers' compensation statute without being punished for it, and that every Illinois worker has that right. We believe, however, that Illinois State law also gives each and every one of its citizens the right to not be maliciously defamed by others regardless of whether that person is an employee subject to a collective-bargaining agreement. A cause of action for malicious defamation exists independently of the collective-bargaining agreement.

■ We also feel that the citing of *Green*, in *Bartley*, is not determinative of the issue presented. Nowhere in *Green* do we find that the alleged defamations were made with actual malice. We therefore hold that where the complaint alleges actual malice, which we note plaintiff must still prove in this case, the action is not preempted by section 301 of the LMRA. Accordingly, the decision of the trial court is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BARRY, P.J., and HEIPLE, J., concur.