LOWE EXCAVATING COMPANY, Plaintiff-Appellant, v. INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL NO. 150 *et al.*, Defendants-Appellees.

Second District   No. 2—88—1005

Opinion filed March 3, 1989.

David W. McArdle, of Zukowski, Rogers & Flood, of Crystal Lake, and

Abramson & Fox, of Chicago (Gerard C. Smetana, of counsel), for appellant.

Louis E. Sigman, of Baum & Sigman, Ltd., of Chicago, and Harold C. McKenney, of Holmstrom & Green, of Crystal Lake (Dale D. Pierson and R. Mark Gummerson, of counsel), for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff appeals from the interlocutory order entered by the circuit court of McHenry County on October 11, 1988. This order denied plaintiff's request for a preliminary injunction due to a finding of Federal preemption of the issues. The trial court held that plaintiff's request for a preliminary injunction enjoining defendants from picketing with placards relating to area standards, when such placards allegedly contained statements which were knowingly false or made in reckless disregard for the truth, must be denied as this area is preempted by Federal law. We reverse.

Plaintiff, Lowe Excavating Company (Lowe), is an Illinois corporation engaged in excavating and site preparation. Plaintiff entered into a contract with FAMCO Corporation, a general contractor, agreeing to provide labor and services for a Federal housing project known as Canterbury Place. During the fall of 1987, the defendant, International Union of Operating Engineers Local No. 150 (union), attempted to persuade plaintiff to recognize the union for collective bargaining purposes. This attempt failed. On February 15, 1988, plaintiff received a mailgram from the codefendant and business agent for the union, Robert Darling. The mailgram stated that after a careful investigation of plaintiff's policies regarding payment to employees, the union determined that plaintiff was not meeting the area standards on this project. On February 15, 1988, defendant also began picketing the Canterbury Place jobsite carrying placards that stated:

"NOTICE TO THE PUBLIC
LOWE EXCAVATING DOES NOT PAY THE PREVAILING
WAGES AND ECONOMIC BENEFITS FOR
OPERATING ENGINEERS WHICH ARE
STANDARD IN THIS AREA

OUR DISPUTE CONCERNS ONLY SUBSTANDARD
WAGES AND BENEFITS PAID BY THIS COMPANY

LOCAL 150
International Union of
Operating Engineers, AFL-CIO"

As a result of the picketing, FAMCO ordered Lowe off the jobsite on February 17, 1988. The defendant ceased picketing at that time.

On March 22, 1988, Lowe employees elected the Congress of Industrial Unions (CIU) as its representative for collective bargaining purposes. The National Labor Relations Board certified CIU as agent, and Lowe and CIU signed a collective bargaining agreement on August 15, 1988. This agreement was made retroactive to April 15, 1988, and provided that Lowe would pay wages equal to or higher than others in the area.

On September 27, 1988, plaintiff received a telegram from defendant reiterating the claims made in the mailgram of February 15. This telegram was limited to a jobsite in Crystal Lake, Illinois, at which the plaintiff was performing excavation and site preparation services. On September 28, 1988, defendant began picketing the Crystal Lake site and also resumed picketing at the Canterbury Place jobsite. The placards displayed by the defendant contained the identical language that appeared during the February picket. As a result of the picketing, Lowe was ordered off the Crystal Lake jobsite.

Plaintiff initially filed a complaint on February 17, 1988, seeking a temporary restraining order, a preliminary injunction, and a permanent injunction enjoining the defendant from engaging in allegedly false picketing at a jobsite where plaintiff was working. Plaintiff also sought damages for tortious interference with prospective economic advantage. On February 18, 1988, defendant filed a petition for removal to Federal district court claiming that plaintiff's complaint seeks redress for an unfair labor practice and therefore exclusive jurisdiction rests with the Federal court. On June 10, 1988, defendant's petition was denied and the case remanded to State court. The Federal court stated that plaintiff's complaint did not on its face contain a Federal claim and therefore the court was without subject matter jurisdiction. This order was not appealed.

Plaintiff filed an amended complaint on July 22 and a second amended complaint on August 4, 1988. Plaintiff's second amended complaint included counts for libel and slander in addition to tortious interference and requested injunctive relief. Defendant filed a motion to dismiss pursuant to section 2—619(a)(1) of the Code of Civil Procedure stating that the court had no subject matter jurisdiction. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(1).) The lower court granted defendant's motion to dismiss and gave plaintiff leave to amend its complaint.

Plaintiff filed its third amended complaint alleging tortious interference with contractual relations, tortious interference with prospec-

tive economic advantage, trade libel and negligent interference with contract. Plaintiff sought both injunctive relief and damages. Defendant again filed a motion to dismiss pursuant to section 2—619(a)(1) stating plaintiff's claims were barred due to the court's lack of jurisdiction. Plaintiff also filed a motion for a temporary restraining order and a preliminary injunction. Plaintiff sought to enjoin the defendant from carrying placards that stated plaintiff did not pay wages consistent with the standards in the area. Plaintiff also sought to enjoin the defendant from communicating to others that Lowe is nonunion. Plaintiff alleged that defendant knew these statements were false. On October 11, 1988, the trial court entered an order denying defendant's motion to dismiss. The court also granted plaintiff's motion for a temporary restraining order in part. The court entered a temporary restraining order prohibiting defendant from disseminating the claim that Lowe was nonunion. However, the court denied plaintiff's request to enjoin defendants from picketing with placards referring to area standards on the basis of Federal preemption. Plaintiff appeals this portion of the court's order.

The sole issue on appeal is whether the National Labor Relations Act (NLRA) deprives a State court of jurisdiction to enjoin a union from picketing with placards that contain knowingly false statements, or statements made in reckless disregard for the truth.

■■ ■ Plaintiff's contention is that the trial court erred in denying its request for a preliminary injunction due to Federal preemption. Generally, the elements which a trial court should consider in deciding whether to issue a preliminary injunction are: (1) the possibility of irreparable harm to the plaintiff's legal rights pending the outcome of trial if the preliminary injunction does not issue; (2) the potential irreparable harm to the defendant's rights if it does; and (3) the plaintiff's likelihood of success on the merits. (*Kanter & Eisenberg v. Madison Associates* (1987), 116 Ill. 2d 506, 510.) On appeal from the grant or denial of a preliminary injunction an appellate court is to consider whether the circuit court abused its sound discretion in evaluating these considerations and granting or denying the preliminary injunction. *Chicago Health Clubs, Inc. v. Picur* (1988), 124 Ill. 2d 1, 7-8.

The issue before this court, however, does not rest on whether the trial court abused its discretion in denying plaintiff's request for an injunction. The trial court found that it was preempted from exercising its discretion and therefore did not analyze the elements set forth above. This court is to determine if this refusal to exercise discretion was proper.

Initially, we note that the issue of preemption was not decided by the Federal district court. Defendant filed a petition for removal on February 18, 1988, claiming that plaintiff's complaint sought redress for an unfair labor practice and therefore jurisdiction rested with the Federal court. Defendant's petition was denied and the case remanded back to the circuit court. The Federal court concluded that plaintiff's complaint did not on its face state a cause of action under Federal law and therefore the court lacked subject matter jurisdiction. The court did not consider the question of preemption.

▌ There are two types of Federal preemption over State torts regarding employee/employer or labor relationships. The first type of preemption that pertains to this area is Federal common-law preemption under section 301 of the Labor Management Relations Act (Act) (29 U.S.C. §185(a) (1982)). Section 301 provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce *** may be brought in any district court of the United States having jurisdiction of the parties ***." (29 U.S.C. §185(a) (1982).)

Federal labor law preempts State tort actions which are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." (*Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 220, 85 L. Ed. 2d 206, 221, 105 S. Ct. 1904, 1916.) The key inquiry is "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." 471 U.S. at 213, 85 L. Ed. 2d at 216, 105 S. Ct. at 1912.

▌ The case at bar cannot be preempted by section 301 of the Act because there is no labor contract to interpret in this case. The State tort claims in this case are not "substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract." Therefore, evaluation of the tort claim cannot be intertwined with the terms of a labor contract. The only contract in force is the one between Lowe and UIC. That contract is not at issue here. This case is not preempted by Federal case law.

▌ The second type of Federal preemption requires preemption whenever the conduct complained of is "arguably subject" to the jurisdiction of the National Labor Relations Board (NLRB). (See *San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon* (1959), 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773.) However, even if the claim involves State torts that are "arguably subject" to the jurisdiction of the NLRB, the court in *Garmon* noted an

exception to preemption when the State's interests outweigh any peripheral Federal concern or "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Garmon,* 359 U.S. at 244, 3 L. Ed. 2d at 782, 79 S. Ct. at 779, citing *International Union, United Automobile, Aircraft & Agricultural Implement Workers of America v. Russell* (1958), 356 U.S. 634, 2 L. Ed. 2d 1030, 78 S. Ct. 932.

■ Defendant argues that area standards picketing is protected under section 7 of the NLRA. The union also cites authority for the proposition that the area standards protest does not lose protection simply because the employer presents evidence that establishes its labor costs met or exceeded the standard. Since the activity in question is "arguably protected" by the NLRA, defendant, citing *Garmon,* contends that preemption must apply. This court agrees with defendant and finds this activity is "arguably" protected. However, determining that the activity is arguably protected or prohibited by the NLRA does not dispose of the issue. We must then look to the exception to preemption set forth by the Supreme Court in *Garmon.*

The exception to preemption, as set forth in *Garmon,* is essentially a balancing of interests. On the one hand we have the Federal interest in establishing a uniform set of rules dealing with labor disputes. On the other hand, we have the interests of the State in protecting its citizens from conduct that it deems harmful or inappropriate. When balancing the competing interests, we look at the risk of State interference with the national labor policy if the State is allowed to adjudicate the matter in controversy. (See *Vaca v. Sipes* (1967), 386 U.S. 171, 180, 17 L. Ed. 2d 842, 852, 87 S. Ct. 903, 911; *Fisher v. Illinois Office Supply Co.* (1984), 130 Ill. App. 3d 996, 1000.) If the risk of interference is minimal and the activity in question is only a peripheral concern of the Act, the matter is not preempted, and the State may proceed. *Garmon,* 359 U.S. at 243-44, 3 L. Ed. 2d at 782, 79 S. Ct. at 778-79.

The United States Supreme Court discussed the Federal interests and stated:

> "We have necessarily been concerned with the potential conflict of two law-enforcing authorities, with the disharmonies inherent in two systems, one federal the other state, of inconsistent standards of substantive law and differing remedial schemes." (*Garmon,* 359 U.S. at 242, 3 L. Ed. 2d at 781, 79 S. Ct. at 778.)

Several separate and distinct tribunals with a diversity of procedures are as sure to produce inconsistent decisions as are different substantive rules of law. (*Garmon*, 359 U.S. at 243, 3 L. Ed. 2d at 782, 79 S. Ct. at 778, citing *Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776* (1953), 346 U.S. 485, 490-91, 98 L. Ed. 228, 239-40, 74 S. Ct. 161, 165-66.) The State's interest in this matter is to protect its citizens from malicious defamation by others and to redress any injury that may have been caused by this conduct. *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 341, 41 L. Ed. 2d 789, 806, 94 S. Ct. 2997, 3008.

This exception to preemption was also discussed in the case of *Linn v. United Plant Guard Workers of America, Local 114* (1966), 383 U.S. 53, 15 L. Ed. 2d 582, 86 S. Ct. 657. In *Linn*, the plaintiff was an officer of an employer. The defendant was a union that sought to unionize the employer. Plaintiff filed a complaint alleging that the union published several defamatory remarks during a union organizing campaign. These remarks included statements that plaintiff was "lying" to company employees and had "robbed" them of pay increases. The court stated that while there is considerable leeway with regard to defamatory statements made during labor disputes, even the NLRB does not allow a party to intentionally injure another by publishing defamatory material known to be false. (*Linn*, 383 U.S. at 61, 15 L. Ed. 2d at 589, 86 S. Ct. at 662.) The court found that the State's interest outweighed the Federal concerns and stated that "a State's concern with redressing malicious libel is 'so deeply rooted in local feeling and responsibility' that it fits within the exception specifically carved out by *Garmon*" (*Linn*, 383 U.S. at 62, 15 L. Ed. 2d at 589, 86 S. Ct. at 663), and, therefore, the claim was not preempted.

Defendant argues that *Linn* is distinguishable on the basis of the untruths that were published. Defendant alleges that *Linn* involves statements about "lying" and "robbing," "the stuff of which libel claims are traditionally made." Defendant asserts that since the case at bar deals with untruths involving area standards, the *Linn* rationale does not apply. This court finds no authority to support the proposition that the specific content of the untruth is relevant to the *Linn* analysis.

In *Fisher v. Illinois Office Supply Co.* (1984), 130 Ill. App. 3d 996, the plaintiff alleged that a letter from the employer's agent to the union was defamatory in nature. The court noted that the NLRB would only be peripherally concerned with this type of injury. (130 Ill. App. 3d at 1001.) The State court would be concerned with, *in-*

*ter alia,* the nature and extent of the injured plaintiff's reputation, the defendant's mental state as it pertains to the possible award of punitive damages and mental pain and suffering. (130 Ill. App. 3d at 1001.) The court did recognize that adjudicating the truth or falsity of the communication may cause some overlap with Federal policy favoring resolution of these matters in arbitration. (130 Ill. App. 3d at 1001.) However, the court held that the matter was not pre-empted and stated that "the protection of an individual's interest in his reputation is a deep and traditional concern of the State of Illinois." (130 Ill. App. 3d at 1001.) In conclusion, the court stated that "the preemption doctrine should not be used as a shield to protect malicious falsehoods where the State has an overriding interest in protecting its citizens from the damage which these falsehoods inevitably cause." 130 Ill. App. 3d at 1001.

The Illinois Supreme Court has also held that an action in State court for defamation is not preempted by the jurisdiction of the NLRB. (See *Krasinski v. United Parcel Service, Inc.* (1988), 124 Ill. 2d 483.) In *Krasinski,* the plaintiff filed suit alleging wrongful discharge and defamation based on statements indicating he had stolen some equipment. (124 Ill. 2d at 486.) The trial court, asserting Federal preemption, dismissed plaintiff's defamation claim and plaintiff appealed. (124 Ill. 2d at 488.) Defendant argued that plaintiff's claims arose out of unfair labor practices and were, therefore, preempted by the exclusive jurisdiction of the NLRB. (124 Ill. 2d at 492-93.) The supreme court indicated that simply because "this claim could arguably be characterized as an unfair labor practice does not require preemption in order to protect the exclusive jurisdiction of the NLRB." (124 Ill. 2d at 493.) The court concluded by discussing the applicability of *Linn* and holding that a State claim for malicious publication of libelous statements during a labor dispute is not preempted by the exclusive jurisdiction of the NLRB. 124 Ill. 2d at 495.

The case at bar fits into the exceptions carved out by the Supreme Court in *Garmon.* The issues in deciding the merits of the case are of only peripheral concern to the NLRB. Defendant contends that the issue presented is whether Lowe was in fact paying area standards. To decide this would force the State court to interpret or enforce the NLRB's area standards doctrine. Defendant states that enforcing the area standards doctrine is of primary importance to the NLRB and, therefore, the exception to preemption does not apply.

The underlying issue in this case is not whether plaintiff paid wages sufficient to meet area standards. The issue is whether

defendant, with actual malice, published a statement with knowledge of its falsity, or in reckless disregard for the truth. While truth or falsity is an important element in the tort of trade libel, it is certainly not the only issue to be considered. The issues of injury to reputation and defendant's mental state must also be considered. These issues are of only peripheral concern to the NLRB. The NLRB may be concerned with "area standards," but this concern is outweighed by the State's interest in protecting its citizens from malicious publication of defamatory material. This cause of action fits into the exception carved out by *Garmon*, and, therefore, the State court is not preempted by the exclusive jurisdiction of the NLRB.

■ Defendant next contends that the State of Illinois has in force an anti-injunction act that is applicable, and thus the State court cannot enjoin the union from peaceful picketing. (See Ill. Rev. Stat. 1987, ch. 48, par. 2a(1).) This act may or may not apply. That issue is not before this court at this time. The trial court did not reach the question of Illinois law applying to this case. The court ruled that it could not consider these substantive rules due to Federal preemption. Therefore, the question of whether or not the anti-injunction act applies in this case is not ripe for review.

In conclusion, we find that the cases of *Linn* and *Krasinski* are controlling in this matter. We hold that this case falls within the exception to preemption noted by the United States Supreme Court in *Garmon* and is also not preempted by Federal case law. Therefore, we remand this case to the circuit court of McHenry County to review the plaintiff's motion for a preliminary injunction consistent with this opinion.

The judgment of the circuit court of McHenry County is reversed, and the cause is remanded.

Reversed and remanded.

LINDBERG and WOODWARD, JJ., concur.